(No. 15903.—Decree affirmed.)

J. M. PATTERSON et al. Appellants, vs. THE VERMILION
ACADEMY, Appellee.

*Opinion filed April 14, 1924—Rehearing denied June 12, 1924.*

1. MORTGAGES—*when mortgage is only to secure payment of annuity and expires with mortgagee's death.* Where a party gives to a charitable institution his real property, notes and mortgages pursuant to a contract with the institution to pay him a fixed annuity and to devote the rents and income of such property to purposes of the institution, a mortgage given back by the institution must be deemed to have been given to secure the payment of the annuity and not the performance of other provisions of the contract, where the deed of the real estate given to the institution gives the grantee the right to convey the fee; and the mortgage will expire on the termination of the annuity by the grantor's death.

2. DEEDS—*difference between a covenant and condition subsequent.* A condition subsequent is to be distinguished from a covenant, as non-fulfillment of a condition usually results in forfeiture of the estate, entitling the grantor to re-enter and possess himself of the property.

3. EQUITY—*equity will not enforce forfeiture on breach of condition subsequent.* A court of equity may in a proper case enforce specific performance of a covenant, but it will not lend its aid to enforce a forfeiture because of the breach of a condition subsequent in a deed or contract conveying property.

4. SAME—*equity will not terminate trust by enforcement of forfeiture clause.* A court of equity has plenary jurisdiction in the administration of trust estates in the hands of trustees, but where a party has given his property to a charitable institution pursuant to a contract with it to devote the property to certain purposes and to pay him an annuity, equity will not take jurisdiction of a bill to terminate the trust by enforcement of a forfeiture clause in the deed and contract for breach of a condition subsequent.

APPEAL from the Circuit Court of Vermilion county; the Hon. JOHN H. MARSHALL, Judge, presiding.

JOHN H. LEWMAN, and O. M. JONES, for appellants.

ACTON, ACTON & SNYDER, and CLARK & HUTTON, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants' intestate, Golden Patterson, filed a bill in the circuit court of Vermilion county for the purpose, as declared in the briefs, of enforcing the terms of a written contract and to foreclose a mortgage given to secure the performance of that contract. On a hearing the bill was dismissed for want of equity, and the cause comes here for review.

Golden Patterson, appellants' intestate, on June 3, 1914, entered into a contract with appellee, the Vermilion Academy, a corporation organized under the laws of the State of Illinois for educational purposes and not for pecuniary profit, by which he transferred to it all his personal and real estate, amounting to approximately $200,000, and consisting of notes, mortgages and farm lands. It appears that he was at that time a bachelor, about eighty years of age, and had been considering for some time the making of such disposition of his property as would cause it to be used for educational or charitable purposes. Pursuant to that purpose negotiations were had between him and the academy. The contract entered into on that day provided for the transferring of all notes and mortgages to the academy, which was "to hold said notes and moneys received, upon collection of the same, and interest thereon, in trust as an endowment fund of the party of the first part, to be known as the 'Golden Patterson Endowment Fund,' the said endowment fund to be loaned and kept out at interest by the party of the second part and the income derived therefrom to be used by the party of the second part exclusively for school purposes for which the party of the second part has been incorporated; and the party of the second part shall have no lawful right or power to use any part of the principal for any purpose except to loan the same, and thereby raise an annual income to be used exclusively for school purposes as aforesaid, and not with a view to profit; and any court of competent jurisdiction shall have full power

and jurisdiction to enforce this trust and compel the proper management and control of said endowment fund, providing that should the party of the second part at any time fail or refuse to maintain an institution for educational purposes under its charter and fail or refuse to expend the annual income exclusively for school purposes as provided for in its articles of incorporation, then said endowment fund hereby granted shall revert to and vest in the party of the first part, his heirs, executors, administrators or assigns." The contract also provided that Patterson should convey, by good and sufficient deed of conveyance, the real estate described. The contract stipulated as to the use of the income from the real estate in the same manner and with the same forfeiture as to the notes and mortgages. As to the real estate it was further stipulated as follows: "With the full right in the party of the second part, after the death of the party of the first part, to sell and convey said lands, or any part thereof, by a good and sufficient deed of conveyance, and any moneys realized from the sale of said lands, or any part thereof, shall be held by the party of the second part in trust as a part of the endowment fund mentioned in paragraph 1 above, and exactly upon the same terms and conditions and for the same purposes and with the same rights, powers and liabilities in said paragraph 1 above mentioned, provided that should the party of the second part fail or refuse to maintain an institution for educational purposes under its charter at any time prior to the sale of said lands or any part thereof, then such land remaining unsold shall, in the event of the failure of the party of the second part to maintain an institution for educational purposes as provided for in its articles of incorporation, revert to the party of the first part, his heirs and assigns."

The contract stipulated as a consideration for this agreement that the academy agrees to pay to Patterson six per cent per annum from March 1, 1914, on the sum of

$200,000, this being the value placed upon all of the property transferred by Patterson. The first payment of $12,-000 was to be made on March 1, 1915. Thereafter the $12,000 was to be paid in semi-annual payments, $6000 on each first day of September and first day of March, commencing with September 1, 1915, "so long as the party of the first part shall live." The contract also provided that the academy would furnish good and suitable board and room and free tuition to two scholars to be selected by Patterson during his lifetime and after his death by the supervisor of the town of Love, such scholars to be selected from among the worthy children of the town of Love whose parents were unable to pay the expense of such education. It was agreed in the contract, also, that the academy should execute and deliver back to Patterson a good and sufficient first mortgage on all of the real estate above described, "to secure the faithful performance of all the agreements and covenants herein made by the party of the second part."

The deed executed by Patterson pursuant to the contract warrants and conveys to the academy the real estate therein described in trust for the purpose of receiving all the rents, issues and profits arising therefrom and using the same exclusively for school purposes for which the academy has been incorporated and not to be used with a view to profit. The deed provides also, in accordance with the terms of the original contract, that after the death of Patterson the grantee may, at its option, sell and convey the real estate, or any part thereof, by a good and sufficient deed of conveyance and thereby convey the fee to the lands, the moneys realized from the sale of the lands to be held as a part of the permanent endowment fund. The deed also contains a recital of other stipulations of the contract.

At the time of the making of the deed there was executed by the academy to Patterson its mortgage deed in the following form: "The mortgagor, Vermilion Academy, a corporation of Vermilion Grove, in the county of

Vermilion, State of Illinois, mortgage and warrant to Golden Patterson, of Humerick, county of Vermilion and State of Illinois, to secure the payment of $12,000 per year during his life and for the performance of all covenants and agreements under a contract between the mortgagor and mortgagee dated June 3, 1914, to which reference is hereby made, the following described real estate, [here follows description of real estate,] situated in the county of Vermilion, in the State of Illinois, hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of this State."

The original bill set out that contrary to the terms and conditions of the contract the academy did not use the income from the property transferred to it by Patterson for school purposes but it had been used to pay the annuity of $12,000 due to him. The prayer of the bill was that the court enforce the provisions of the contract by compelling the academy to return the property and that the mortgage be foreclosed. The bill was filed on September 23, 1920. Patterson died April 1, 1921. His death was suggested on the record, and the appellants, his heirs, were substituted as parties complainant. An amended and supplemental bill was filed, and appellee filed its answer thereto, admitting the execution and delivery of the contract, mortgage and deed but denying that it had not kept and performed the covenants and agreements contained in the contract but averring that it had fully performed the same. It set out in the answer that from time to time it collected the interest on the notes transferred to it by Patterson and the rents accruing on the land conveyed to it; that it received the same under its articles of incorporation as a part of its general fund to maintain an institution of learning under its charter powers, as provided by the statute giving it the legal right to receive, either by gift or purchase, property for the use of the corporation, and to use the same, as well as other property, as might be considered most con-

ducive to the interest of the institution and its purposes; that it was considered most conducive to the best interest of the institution to use the funds belonging to the corporation to carry out its part of the agreement, and that in so doing it was not using such funds for any other than school purposes, as provided in its articles of incorporation, and that it had not at any time used any of the funds with a view to profit. It is admitted by the answer that during some of the years since the execution of the contract with Patterson all of the rents from the land and the interest from the notes were used in payment of the semi-annual sum due Patterson, and in addition thereto other funds of the academy were used in making up the balance of such payments; that in some years it used only a portion of the interest and rents in paying the amount due Patterson; that it had a lawful right to use said income for such purpose in maintaining and providing for the institution, under its articles of incorporation. The answer also avers that at the time of the execution and delivery of the contract Patterson knew that a part or all of the interest on the notes and the rents from the land would of necessity from time to time be used in making the semi-annual payments to him, and that the mortgage given back on the land was for the purpose of securing such payments. It is also averred in the answer that at each time Patterson received a payment from the academy he knew that it was made up, either in whole or in part, out of the interest from the notes and the rents from the land; that he knew that the other income of the academy was not sufficient to meet such payments; that he made no protest or claim that the payments so made were in violation of the contract, and he thereby waived any right to forfeit the contract on that account; that on March 1, 1921, after having started the suit in question, he received a payment of $6000 knowing the same to be made out of the interest and the rents from the property, and thereby waived all right to forfeiture. The answer denies

the complainant was without remedy except in a court of chancery and avers that he had an adequate remedy at law, and that a court of chancery has no jurisdiction or right to declare a forfeiture.

The court held, first, that equity has no jurisdiction; and second, that the payment of the income to Patterson was not a violation of the contract but in accordance with the interpretation of the contract as placed thereon by the parties.

The principal grounds upon which appellants seek a reversal of the decree dismissing the bill are, first, that the payment of the annuity out of the income of the property transferred was a violation of the contract to use such income exclusively for school purposes, and that this being so, a court of equity will enforce the forfeiture clause of the contract as made by the parties; second, that a court of equity has jurisdiction of the action because it involves the foreclosure of a mortgage; third, there was no waiver or estoppel on the part of Patterson; and fourth, the court erred in permitting incompetent testimony to be introduced.

We will consider first the question of the jurisdiction of a court of equity in this case in the light of the admitted circumstances.

Appellee contends that the mortgage in the case was given only for the purpose of securing the payments of the annuity, and that since it is stipulated that there was no default in those payments, there was no default under the mortgage and nothing for a court of equity to foreclose, and therefore nothing in the case of which equity will take jurisdiction. Appellants earnestly urge that the mortgage was given not only for the purpose of securing the payments, but for securing the enforcement of all the terms and conditions of the contract, including the use of the income for school purposes. It is necessary only to consider the instruments which passed between the parties to determine the purpose of the mortgage. The deed transferring the

mortgaged real estate to the academy gave it a right to sell the real estate after the death of the grantor, "by a good and sufficient deed of conveyance, and thereby convey the full fee simple title in and to said lands, or any part thereof, to any purchaser." The contract provides for the use of the endowment fund not only during the life of Patterson but indefinitely thereafter. It seems clear that it was the intention of the grantor, as shown by the contract and deed, in giving to his grantee the right to convey the property in fee simple after his death, that the mortgage should be for the purpose, only, of securing the annuity during his life and that it would cease to become operative upon his death. The language of the deed is hardly compatible with a mortgage, if such an instrument could be conceived, to secure the use, according to the contract, of the money arising from the sale in fee simple of the mortgaged land after his death. Either the mortgage expired with his death, or the academy must, if it chooses to convey the real estate, do so subject to the mortgage. This is clearly incompatible with the definite stipulations of the deed. Patterson evidently intended the mortgage as security for payment of the annuity, and that with his death and the termination of the annuity the mortgage should likewise expire. Under no other construction could the academy convey the full fee simple title to the land. The mortgage having been given to secure the payments of the annuity, only, there having been no default in such payments, and the mortgage having died with the mortgagee, there is nothing left for a court of equity to foreclose. It might be a matter of some interest to contemplate the character of foreclosure decree to be entered on a mortgage such as appellants contend this to be, if that question were in the case.

It follows that the only possible relief remaining is the forfeiture which the contract stipulated shall arise in case the academy shall fail to carry out its agreement as to the use of the funds. This forfeiture is by the contract to

arise on a condition subsequent. If we were to concede, which we do not, that there has been a breach of the contract, we have in this case a bill to declare a forfeiture on the ground of the breach of a condition subsequent. That condition is, that the income arising from the property conveyed shall be used for school purposes and none other. A condition subsequent is to be distinguished from a covenant. The consequence of the non-fulfillment of this condition is the forfeiture of the estate. By such forfeiture the grantor may re-enter and possess himself of the property. The rule has long been settled in this State that while a court of equity may in a proper case enforce specific performance of a covenant, it will not lend its aid to enforce a forfeiture because of the breach of a condition subsequent in a deed or contract conveying property. That the breach in this case, if there is a breach, is of a condition subsequent is shown by the language of the contract and the deed, "that should the party of the second part at any time fail or refuse to maintain an institution for educational purposes under its charter and fail or refuse to expend the annual income exclusively for school purposes as provided for in its articles of incorporation, then said endowment fund hereby granted shall revert to and vest in the party of the first part," etc. In *Tarr* v. *Stearman,* 264 Ill. 110, the complainant filed a bill to restrain the defendant from managing, controlling and retaining possession of a dental business, from retaining possession of personal property used in the business, and from engaging in the practice of dentistry within twenty-five miles of the city of Springfield without the written consent of the complainant. The complainant based his right to relief upon a certain contract, wherein, by reason of promises on the part of the defendant, the complainant had transferred his dental business in the city of Springfield to him. The contract was a contract of conditional sale, and the complainant claimed a right of forfeiture thereof under its terms. It was there held that

equity will not interpose to enforce or carry into effect a forfeiture. Numerous cases are there reviewed and cited holding this doctrine. It is well settled in this State that a court of equity will not lend its aid to enforce a forfeiture because of the breach of a condition subsequent in a deed or contract conveying property. *Golconda Northern Railway* v. *Gulf Lines Railroad,* 265 Ill. 194; *Moore* v. *Martin,* 233 id. 512; *Toledo, St. Louis and New Orleans Railroad Co.* v. *St. Louis and Ohio River Railroad Co.* 208 id. 623; *Dunne* v. *Minsor,* (*ante,* p. 333.)

There being no mortgage to foreclose, a court of equity cannot take jurisdiction of the subject matter of this lawsuit for the purpose of foreclosing a mortgage.

Appellants contend that a court of equity has jurisdiction of this matter because it involves a trust, and having jurisdiction for that purpose it will proceed to determine the questions involved in the case. A court of equity has plenary jurisdiction in the administration of trust estates in the hands of trustees. (*Frackelton* v. *Masters,* 249 Ill. 30; *Sherman* v. *Leman,* 137 id. 94.) The purpose of this bill, however, is not to administer a trust. Appellants are not seeking to compel the academy to carry out the terms of the trust, but are seeking to terminate the trust by the enforcement of the forfeiture clause of the deed and contract by reason of a breach of a condition subsequent therein. We are of the opinion, therefore, that the court of equity had no jurisdiction in this case and the chancellor did not err in dismissing the bill.

It does not become necessary to consider other questions raised on the record.

For the reasons indicated the decree will be affirmed.

*Decree affirmed.*