Ralph Horween and Genevieve B. Horween, Plaintiffs-Appellants, v. Harold H. Dubner, Annette Dubner and Exchange National Bank, Defendants-Appellees and Cross-Appellants.

Gen. No. 50,041.

First District, Second Division.

November 23, 1965.

311

Spray, Price, Townsend & Cushman, of Chicago (Robert S. Cushman and James G. Hiering), for appellants.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (Vernon M. Welsh, Edward G. Proctor, and Frank L. Winter, of counsel), for appellees and cross-appellants.

MR. JUSTICE LYONS delivered the opinion of the court.

This is an appeal from a decree which, in substance, approved the findings of a Revised Master's Report that the conditions of an easement were violated, that the violation failed to terminate the easement, that a counterclaim of defendants be dismissed with prejudice and that plaintiffs' request for attorneys' fees be denied.

The property that is the subject of this lawsuit is part of a 5.76 acre tract of land that was originally owned in its entirety by plaintiffs Ralph Horween and his wife, Genevieve B. Horween. The tract is located in the northeast section of Winnetka about a block from Lake Michigan and is bounded on the north by Private Road and on the south by Tower Road. Plaintiffs purchased the property from Harold Ickes in 1945. At that time, the property was heavily wooded except for cleared areas immediately surrounding three buildings, which consisted

of a large stucco main residence, a chauffeur's cottage and a gardener's cottage. Plaintiffs have lived in the main house since 1945 until recently when they moved to the chauffeur's cottage and rented the main house to a friend.

In 1954 and 1955 plaintiffs sold three lots from their property. No utilities were available on Private Road except gas. Plaintiffs knew this when they sold a lot to Kenneth Prince. Therefore, they reserved easements in their deed to Prince running next to the north-south lines on both sides of the lot for the benefit of the adjacent lot immediately to the north.

In July, 1956, plaintiffs sold this adjacent lot on the north to defendants, Dr. Harold H. Dubner and his wife, Annette Dubner. At the closing of the deal, plaintiffs told defendants' attorney about the easements over the Prince lot for the purpose of reaching the utilities on Tower Road, and that they would send him a copy of the easement reservations, which they did a few days later.

Prince had laid his driveway and completed his landscaping before defendants installed their utilities. Thus hardship would incur to defendants, as the Prince lot easement required restoration of the property by anyone making use of the easement. Plaintiff Ralph Horween discussed this problem with Prince in April, 1957. He told Prince that in order to save both defendants and Prince a lot of grief, he would grant defendants a second easement over his own property, along the east side of the Prince lot. On April 30, 1957, plaintiffs had such an easement drafted, and it was delivered to defendants' attorney. It is this easement that is involved in this case. By way of clarification, defendants now have a total of three access routes to Tower Road for utilities; viz., two strips over the Prince lot along the west and east lot lines thereof, which were created by the easement reservation in the deed from plaintiffs to Prince, and a five-

313

foot strip over plaintiffs' property along the east line of the Prince lot, which was created by a gift from plaintiffs to defendants. The testimony of plaintiff, Ralph Horween, is to the effect that he granted the easement only to accommodate Mr. Prince and defendants, and that he neither asked for nor received payment from anyone.

The easement involved here provided that it was "for the purpose of placing and maintaining underground," certain named utilities. It further provided:

> As *conditions* precedent to the continued existence of the easement granted herein, IT IS EXPRESSLY UNDERSTOOD that:
>
> (a) *No manhole or other contrivance or structure appearing on or above the surface of the ground shall be placed upon the said easement.*
>
> (b) The party in whose favor said easement exists or for whose use said easement is granted at their own cost and expense shall repair and replace on the easement all property, shrubs, fences, trees, flowers, plants and grass which may be damaged as a result of the exercise of the rights created by said easement.
>
> (c) The easement hereby granted shall be null and void and of no further effect should an attempt be made at any time to install or use the utilities installed for more than a single homestead erected upon the property described herein as Parcel No. 2, or should an attempt be made at any time to extend the said facilities to provide for premises other than that on said Parcel No. 2. (Emphasis supplied.)

In the summer of 1957, subsequent to the granting of the easement involved in this suit, defendants used it for the installation of utilities. Plaintiffs inspected the property and found trees and shrubbery knocked down; a clay tile pipe extending above the surface of the ground; piles of raw clay were on the ground; and no attempt

314

had been made to restore the surface to anything like its former condition. Plaintiffs requested that defendants restore the surface and remove the tile pipe. Defendants did nothing as a result of this request until after they installed a swimming pool on their lot three years later.

In the spring of 1960, at the time of the installation of the swimming pool, the easement was used by defendants as a driveway for trucks and excavating machinery.

Later in 1960, defendants installed three large catch basins, covered with concrete and steel manhole covers, on the easement. One of the manholes protruded as much as a foot above the surface. After plaintiff, Ralph Horween, observed the catch basins and manholes, he talked with defendant, Dr. Dubner, and told him that they were contrary to the terms of the easement and would have to be removed. They were not removed, and this suit was filed on August 26, 1960.

Plaintiffs' complaint sought a declaratory judgment declaring the easement null and void and terminated by its own terms because of the violations by defendants of the express conditions precedent to the continued existence of the easement. The complaint also sought an injunction requiring the removal by defendants of certain sewer pipe and other contrivances from the easement and repair and restoration of the easement property. Defendants filed a counterclaim for damages alleging that plaintiffs, at the time of the sale, made false and fraudulent representations with regard to the availability of utilities on Private Road, the street adjacent to the property which plaintiffs sold to defendants. Defendants' counterclaim also alleged that plaintiffs brought this suit as part of a course of action, the purpose of which was to compel defendants to sell their property to plaintiffs at a price far below what they had paid.

The case was referred to a Master. A Revised Master's Report was approved by the trial court which ordered all exceptions to the Report overruled and further ordered

that defendants cut the three catch basins, cleanouts and manholes to a level one foot below the existing top level of said catch basins; that defendants repair and replace on the easement all property, shrubs, trees . . . damaged by either of them or by others acting at their direction . . . ; that defendants pay the Master's fees in the amount of Five Hundred Dollars ($500.00), that the counterclaim of defendants be dismissed with prejudice; and that plaintiffs' request for attorneys' fees be denied.

Plaintiffs' theory of the case is that plaintiffs granted to defendants, as a gift, an easement; that defendants already had other easements for the same purposes; that the continued existence of the easement was expressly conditioned upon the observance of certain conditions precedent, among which was the express condition that "No manhole or other contrivance or structure appearing on or above the surface of the ground shall be placed upon the said easement"; that defendants wilfully violated these express conditions precedent over a long period of time; that the Court erred in failing to enter an order declaring the easement null and void and terminated by its own terms as requested in plaintiffs' exceptions to the Revised Master's Report; that defendants' aforesaid allegations of fraud and misrepresentation together with other allegations in defendants' answer and counterclaim were untrue and made without reasonable cause and not in good faith, within the meaning of Ill Rev Stats (1963) c 110, sec 41; and that the court erred in denying plaintiffs' request for attorneys' fees.

Defendants' theory of the case is in substance, that the grant of easement prohibits the *appearance* of structures on or above the surface of the ground (emphasis supplied) ; that the defendants had a secondary easement to dig up the easement strip in order to put the utilities underground; that they properly repaired all damage resulting from this work; that even if defendants had violated the easement prohibiting manholes on or above

the ground surface and requiring repairs, the terms of the easement, properly construed, do not provide for a forfeiture for such violations; that even if there were violations and even if the easement provided for a forfeiture under the circumstances of this case and under the rule that equity abhors forfeitures; and that the Chancellor utilized sound discretion in denying plaintiffs' request for attorneys' fees under section 41.

 We agree with plaintiffs that an express condition precedent should be construed in accord with the ordinary meaning of the words used, and in light of the surrounding circumstances. There are, however, valid reasons why the provisions of this easement should not be enforced.

 At the outset we disagree with defendants' contention that they have not violated the prohibition against manholes in that the manholes do not appear on or above the surface of the ground. An examination of plaintiffs' exhibits shows that the manhole covers and catch basins do appear on or above the surface of the ground. We find, however, that the Chancellor properly declined to declare a forfeiture for the violation of the easement agreement.

 First of all, the terms of the easement do not provide for a forfeiture of the easement if any violations take place. In construing the agreement, we find that subparagraph (c) specifically provides that the easement is null and void if it is used to serve another lot. The "null and void" provision does not appear in subparagraphs (a) and (b). It is only reasonable to conclude that only a subparagraph (c) violation renders the easement null and void.

 Secondly, equity abhors forfeitures. The rule has long been settled in Illinois that while a court of equity may in a proper case enforce specific performance of a covenant, it will generally not lend its aid to enforce a forfeiture because of breach of a condition subsequent.

317

Patterson v. Vermilion Academy, 312 Ill 386, 144 NE 9 (1924). It is true as plaintiffs contend that plaintiffs' rights under the easement cannot be protected by a recovery of damages in that the violation of the easement agreement is a continuing one. Plaintiffs do, however, have a right to have any excessive violation of the easement agreement corrected by an injunction. We find that the violation, as it presently exists, is not so excessive that it should bring about a forfeiture of defendants' rights under the easement agreement. The Chancellor properly corrected an excessive abuse of the easement provisions by having the catch basins cut down one foot. We feel this brought about an equitable result. To permit a forfeiture of the easement would work an extreme hardship on defendants. Whenever a great wrong or injustice results from a forfeiture, courts of equity will properly prevent a forfeiture.

██ ██ Finally, we take judicial notice that the Village of Winnetka requires catch basins. The parties must have contemplated that the easement agreement comply with the laws of the Village of Winnetka. This court will not declare a forfeiture against a party who attempts compliance with the law.

Plaintiffs, in their complaint, also alleged that defendants had damaged the easement strip by digging up various shrubs, fences, trees and grass. To properly utilize the easement granted to them, defendants, by necessity, had to dig up the easement strip in order to put the utilities underground. The lower court ordered that defendants repair and replace the shrubs, trees, fences, plants and grass which were damaged. Defendants have substantially complied with this Order. Furthermore, natural growth will eventually cover the easement strip.

Plaintiffs' last contention is that they should be awarded attorneys' fees under section 41 of the Civil Practice Act. Section 41 states:

318

> Untrue statements. Allegations and denials, made without reasonable cause and not in good faith, and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court at the trial.

It is plaintiffs' position that the allegations of misrepresentation in defendants' counterclaim were made without reasonable cause and not in good faith.

■■■■■ The allowance of attorneys' fees under section 41 is within the exercise of the sound discretion of the trial court. We find that there was a proper exercise of the Chancellor's sound discretion. The allegations in the counterclaim, that Mrs. Lang, a real estate broker, represented on behalf of plaintiff, that utilities existed on Private Road, were not made in bad faith. Defendants, at the time they filed their counterclaim, had reason to believe that Mrs. Lang was plaintiffs' real estate broker. They subsequently found out that this was not true and dismissed the counterclaim. Plaintiffs contend that defendants presented no evidence to support the allegations in the counterclaim. Plaintiffs further contend that if there was no evidence of misrepresentation presented by defendants, then defendants had to introduce evidence that their statements were made with reasonable cause and in good faith. We disagree with plaintiffs' position. The burden of proof was on the plaintiffs to show that the statements were made without reasonable cause and not in good faith. Defendants did not have to present any evidence as to whether or not they acted with reasonable cause and in good faith, until plaintiffs sustained their burden of proof. Plaintiffs had to present sufficient evidence that the allegations in defendants' pleadings were not only untrue, but that defendants, at the time

319

they made the allegations, knew they were untrue. Year Investments, Inc. v. Joyce, 44 Ill App2d 367, 195 NE2d 21 (1964) (Abst pp 10 and 11 of Opinion).

 Furthermore, as the court stated in Dean v. Kirkland, 301 Ill App 495 at 509, 23 NE2d 180 (1939):

> It must be assumed that attorneys in filing pleadings, have due regard for their duties and responsibilities as officers of the court. Attorneys in filing pleadings are permitted to exercise a broad discretion, based on honest judgment, from the facts presented to them.

We find that the Master and the Chancellor were justified in finding that defendants acted with reasonable cause and in good faith.

 We agree with plaintiffs that the defendants' cross-appeal is totally without merit. There is no evidence to substantiate the allegations in defendants' answer and counterclaim. Furthermore, defendants waived their right to object to the findings and conclusions of the Master in that no exceptions to the Master's Reports were ever filed by defendants. Such a failure to file exceptions constitutes a waiver. 3 Nichols Illinois Civil Practice, § 2944.

For the above reasons, we find that the decree should be and it is affirmed.

Decree affirmed.

BURKE, P. J. and BRYANT, J., concur.