THE PEOPLE *ex rel.* JAMES BAYLOR, Director of the Department of Insurance, Petitioner-Appellant, Cross-Appellee, *v.* MULTI-STATE INTER-INSURANCE EXCHANGE, Respondent-Appellee, Cross-Appellant.

(No. 56745;

First District (4th Division)—June 13, 1973.

*Rehearing denied July 18, 1973.*

William J. Scott, Attorney General, of Chicago, (Warren K. Smoot and Donald S. Carnow, Assistant Attorneys General, of counsel,) for appellant.

Samuel H. Young Professional Corporation, of Chicago, (Samuel H. Young, John D. Cummins, and Nathaniel J. Forgan, of counsel,) for appellee.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Cook County by the Director of Insurance as Liquidator of Multi-State Inter-Insurance Exchange, and a cross-appeal by Leonard Groupe, the collector of assessments from the policyholders of Multi-State Inter-Insurance Exchange.

The issues on appeal are whether the chancellor erred in awarding an additional $200,194 in *quantum meruit* fees to Groupe, a lawyer, because the repeal of section 207 of the Insurance Code on August 7, 1969, rendered further performance impossible under the July 19, 1967, employment agreement, and whether the additional award was improper because Groupe had been discharged under a new contract of August 19, 1969, which had been substituted for the July 19, 1967, agreement; whether the chancellor erred in finding that Groupe was discharged "for reasons that would not deny him the right to compensation"; whether the chancellor erred in awarding fees which were not fixed by

the Liquidator; whether the chancellor erred by failing to weigh all of the evidence adduced; whether the chancellor abused his discretion by not reducing the amount of fees already paid by $50,000; and whether the chancellor erred by awarding fees in *quantum meruit* of $41,545 on 1187 cases in which judgments were obtained before August 7, 1969, without crediting the estate with $34,018.27 previously paid, and in awarding fees in *quantum meruit of* $44,205 on 1263 cases where settlement contracts were obtained without crediting the estate with $35,759.72 previously paid on those same cases pursuant to the contingent fee contract.

On cross-appeal the issues are whether the chancellor's award of $12,509.97 to the Director of Insurance was contrary to the manifest weight of the evidence and inconsistent with the findings contained in the degree, and whether the court erred by failing to enter an order assessing reasonable expenses and attorney's fees against the Liquidator for making statements which he knew to be untrue pursuant to section 41 of the Civil Practice Act.

On September 11, 1964, the Circuit Court of Cook County entered an order dissolving Multi-State Inter-Insurance Exchange and instructing the Director of Insurance to take possession of all its property and business affairs for the purpose of liquidating it for the benefit of the creditors and the policyholders in accordance with article XIII of the Illinois Insurance Code. (Ill. Rev. Stat., ch. 73, § 799 *et seq.*) Multi-State Inter-Insurance Exchange was an insurance reciprocal, which meant its policies provided that policyholders could be assessed an amount equal to their original premium; and prior to August 7, 1969, section 207 of the Illinois Insurance Code authorized the Liquidator to levy such assessments.

In 1967, Leonard Groupe, a licensed Illinois attorney, was employed by the Director of Insurance on a contingent fee basis to collect assessments from the policyholders of Multi-State pursuant to a letter of agreement dated July 19, 1967. This agreement provided that Groupe receive 25% of the amount collected without a suit, 33⅓% of the amount collected by a suit, and 50% of the amount collected where the policyholder did not reside at the address shown on the company's records. In addition, he was to pay all expenses other than court costs incurred for filing and processing the claims. There were approximately 35,000 claims for collection. From September 5, 1967, until his termination in January of 1970, Groupe testified he collected a total amount of $1,062,927.45 and was paid $379,908.30 as fees pursuant to the letter of agreement.

On August 7, 1969, section 207 of the Insurance Code (Ill. Rev. Stat., ch. 73 § 819) was repealed by the Illinois General Assembly, and on

August 19, 1969, Albert Verb, Special Deputy in charge of the Bureau of Liquidation, advised Groupe the Liquidator's instructions were to cease collections of assessments on insurance policies in view of the repeal of section 207. He specifically instructed Groupe he was to make no more collections against Multi-State policyholders unless there was a valid judgment entered before August 7, 1969. Groupe protested these instructions, but in a letter to Verb, dated August 21, 1969, he agreed to comply with the directives.

Groupe testified at the time of receiving the directive there were approximately 151 files in the office of the Chief Justice of the municipal division of the Circuit Court of Cook County awaiting entry of judgment. He said he went to the offices of the Chief Justice, informed him of the instructions, and presented some law with regard to whether the estate was entitled to have these judgments entered *nunc pro tunc* as of the date of default. The Chief Justice concluded it was proper to enter the judgments. After Verb advised Groupe the Liquidator considered these collections to be in violation of his instructions, Groupe refunded the collections and his fees.

Mr. Verb testified around December 18, 1969, he contacted Groupe and told him a Tribune reporter had been in to see him with a long list of Multi-State assessments where the people had paid money to Groupe without judgments entered against them. Verb said he retained the auditing firm of Peat, Marwick, Mitchell & Co., Certified Public Accountants, to perform an audit. Groupe reviewed his records and furnished to the Bureau a list of approximately 682 collections on which fictitious judgment dates were shown and on which there were no judgments entered prior to August 7, 1969. On the basis of these reports the Bureau made refunds to policyholders of $45,278.70 and found that $16,400.72 was due the Bureau for Groupe's fees of which Groupe repaid all but $6,037.97.

When asked how these matters occurred, Groupe stated one of his employees, Daniel Locke, was responsible. Locke testifid he was told by Edward Kennedy, Groupe's office manager, if a return date was prior to August 7, 1969, he should assume this was a judgment date and record it as such. He testified further he had gone to the Chicago Tribune because he believed the collections to be improper and was afraid because he had a criminal record, he would be blamed for it: "I wanted the opinion of an unbiased party, namely, the Chicago Tribune."

Groupe testified he had never instructed Locke to submit false judgment dates to the Bureau of Liquidations and did not discover what Locke had been doing until after he had resigned in December of 1969.

Kennedy testified Locke told him he was afraid he would lose his job if collections were only made on judgments entered before August 7, 1969. Groupe and Kennedy testified Locke was asked to come back to work for a period of time in December to help straighten out the matter.

Verb stated that in December when the story first broke about the improper collections, the Bureau of Liquidations was swamped with calls, and Verb sent Groupe a bill of $2,000 for office expenses and a bill for $4,472 charged by the auditors. On January 26, 1970, Verb wrote a letter to Groupe terminating his employment "In view of the experience of the past thirty days."

The Director of Insurance sought a judgment against Leonard Groupe for the following items: the sum of $6,037.87 for fees retained by Groupe for the collection of assessments from 682 policyholders which were refunded when it was ascertained that fictitious judgment dates had been entered; the sum of $4,472 charged by Peat, Marwick, Mitchell & Co. in auditing the records of Groupe for the Liquidator to determine the number of assessments which were collected by Groupe in violation of his instruction; and the sum of $2,000 as office expenses incurred in making the refunds to 682 policyholders. The Liquidator later amended his petition seeking an order requiring Groupe to refund $50,000 or such other sum as the court might determine of the total compensation of $379,908.30 paid to Groupe on a contingent fee basis from July 19, 1967, to January 26, 1970.

Groupe counterclaimed for an accounting and the fixing of fees in accordance with his contingent fee contract dated July 19, 1967, or, in the alternative, in *quantum meruit,* for 15,166 lawsuits which had been prepared and filed by Groupe, which were in the following status at the time he was relieved of his duties: 1187 suits which had been reduced to final judgment, 1263 suits not reduced to judgment in which Groupe had entered into settlement agreements with policyholders, and 12,716 suits in various stages of litigation.

After hearings, the chancellor awarded the Liquidator of Multi-State a total award of $12,509.97 to cover office expenses, auditor's fees, and fees which Groupe had not repaid in connection with the 682 fictitious judgments. The chancellor held that the payment of fees of $379,837 to Groupe was proper and in accordance with the terms of the contract and denied the claim of the Liquidator for the repayment of $50,000. He further awarded Groupe a judgment for the additional amount of $200,194 on a *quantum meruit* basis computed as follows: the amount of $45,545 for the 1187 cases which had been reduced to judgment prior to August 7, 1969, at the rate of $35 per case; the amount of $44,205 for the 1263 cases where settlement agreements were obtained prior to

August 7, 1969, at the rate of $35 per case; and the amount of $144,444 for the 12,716 cases in various stages of litigation at the time Groupe was instructed to cease collections at the rate of $9 per case.

The Liquidator is appealing the award of *quantum meruit* compensation to Groupe in the amount of $200,194 and the denial of the claim of the Liquidator for a repayment of $50,000 of claimed excess fees out of the $379,800.37 in fees previously paid under the letter of agreement of July 19, 1967.

Groupe cross-appeals from the judgment of $12,509.97 in favor of the Liquidator and the denial of his petition for attorney's fees under section 41 of the Civil Practice Act.

■■ The Director first contends the chancellor erred in awarding fees in *quantum meruit* because the repeal of section 207 of the Insurance Code (Ill. Rev. Stat., ch. 73, § 819) rendered further performance impossible and for the reason that Groupe's services were terminated under a new agreement of August 19, 1969, which had been substituted for the original agreement and would not entitle him to additional fees. These arguments are made for the first time on appeal and were not litigated in the court below, where the issue was whether the collector, Leonard Groupe, had been discharged for good cause. Therefore, we shall not consider them further.

Second, the Director contends the court erred in finding that Groupe had been discharged "for reasons that would not deny him the right to compensation."

■■■ In Illinois it is well settled that an attorney who has been employed under a contingent fee contract is entitled to compensation if discharged by his client without valid cause (*Warner v. Basten* (1970), 118 Ill.2d 419), and in *Miller v. Solomon* (1964), 49 Ill.App.2d 156, the court stated:

> "The cases seem to hold that whether or not an attorney who has been justifiably discharged can recover in *quantum meruit* for the value of his services depends upon the degree of wrongfulness of his conduct."

The Director specifically alleges Groupe was guilty of wrongful conduct in that he collected on 151 *nunc pro tunc* judgments and collected on 682 cases in which it was shown that fictitious judgment dates had been entered and $6,037.87 was still owed by Groupe. The only evidence with respect to the 151 judgments entered *nunc pro tunc* shows they were entered by a judge who had full knowledge of the circumstances, and Groupe stated he believed the estate was entitled to the collections.

There is a conflict in testimony with regard to the enry of the 682 fictitious judgments. Locke testified he entered the fictitious judgment dates with full knowledge and under the direction of Groupe's office

manager, and he enlisted the aid of the Chicago Tribune because he became convinced what he was doing was illegal and feared he would take the blame because he had a criminal record. On the other hand, Kennedy testified Locke told him he had entered the fictitious judgment dates because he was afraid he would lose his job if collections were made only on judgments entered prior to August 7, 1969. The record also shows Groupe cooperated fully in returning the collections. Groupe stated he withheld the $6,037.97 on the advice of counsel because it approximated the amount he believe was owed him on collections he had received on settled cases between August 7, 1969, and August 19, 1969, when he was notified to cease further collections.

■■■ When there is conflicting testimony it is well settled that the credibility of the witnesses is for the trier of fact and will not be disturbed unless the findings are manifestly against the weight of the evidence. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill.2d 352.) After reviewing the record, we conclude the chancellor's determination was not against the manifest weight of the evidence.

Third, the Director contends the chancellor exceeded his statutory power, as a matter of law, in awarding Groupe fees out of the funds of Multi-State not first approved by the Liquidator. Section 202 of the Insurance Code (Ill. Rev. Stat., ch. 73, § 814) provides in part:

> "The compensation of every such special deputy, agent, clerk, assistant, attorney or solicitor shall be fixed, and all expenses of taking possession of the property of the company and the administration thereof shall be approved, by the Director, all subject to the approval of the Court, and should be paid out of the funds or assets of the company * * *."

The Director maintains the award in *quantum meruit* was contrary to the express terms of the statute which provides that compensation is to be "fixed" by the Liquidator. He relies primarily on the case of *People ex rel. Knight v. O'Brien* (1968), 40 Ill.2d 354, where the court held that a court had no authority to play any role in the selection of the attorney for a receiver under the statute involved. The issue of whether the court could pass on the reasonableness of an attorney's fee or the payment out of the assets of the estate was not an issue.

In the case of *People v. Marquette Fire Insurance Co.* (1933), 351 Ill. 516, the court approved the rationale of the decision in *In re Casualty Co. of America* (1927), 244 N.Y. 443, 155 N.E. 735, 736, decided under a similar statute, wherein Mr. Justice Cardozo stated:

> "He (the Liquidator) may fix the rate of compensation as a trustee or an assignee or creditors, or a receiver may be said to fix it, but subject at all times to the approval of the court. The meaning is, that even when he acts the court shall have a veto."

■■ The Liquidator has the power to fix compensation in the first instance, but his determination is always subject to the supervisory power of the court. Any other construction would give the Liquidator immunity against any claim for attorney's fees which he refused to pay.

Next, the Director contends the court erred by failing to weigh all of the evidence adduced at trial in that the court found "that the grounds for Groupe's discharge as alleged in the Director's petition and amendments are wild, spurious, unsubstantiated and otherwise not proven by any of the evidence adduced in this case which in any event would justify this court in denying Groupe the right of compensation." Specifically, he complains the court disregarded the testimony of Daniel Locke, which implicated Groupe in the wrongdoing with regard to the entry of the false judgment dates. Because the testimony was in conflict, it was the duty of the court in a chancery proceeding to evaluate the credibility of the witnesses, and the court plainly resolved the conflict in favor of Groupe. In *Rose v. St. Louis Union Trust Co.* (1968), 99 Ill. App.2d 81, the court said:

> "Where a determination of the case depends largely upon the facts found in the record the findings and judgment of the trial court, in chancery and nonjury cases, will not be disturbed by the reviewing court if there is any evidence in the record to support such findings, and where the testimony is contradictory, a reviewing court will not substitute its judgment as to the credibility of witnesses for that of the trial court which saw and heard the witnesses, unless the findings are manifestly against the weight of the evidence, the chancellor's conclusions in nonjury cases being entitled to the same weight as a jury verdict."

■■ Fifth, the Director contends the chancellor abused his discretion in not approving the Liquidator's recommendation to reduce the amount of fees already paid to Groupe by the amount of $50,000. He ignores the fact the amount awarded was under a contract entered into by his predecessor in office, and Albert Verb had been filing current reports with the court recommending for approval the payment of fees to Groupe. We think it is inappropriate for the Liquidator to originally seek the court's approval for the payment of fees, and then later contend the amount of fees granted under a contract should be reduced. Furthermore, the evidence in the record is not sufficient to establish the fees awarded were excessive.

■■ Finally, the Director urges the chancellor erred in awarding Groupe in *quantum meruit* $41,545 on 1187 cases in which judgments were obtained before August 7, 1969, without crediting the estate with $34,018.27 previously paid under the contract, and $44,205 on 1263 cases where settlement contracts were obtained without crediting the estate

with $35,759.72 previously paid under the contract. The chancellor awarded Groupe those amounts in *quantum meruit* at $35 per case in payment for the work done on cases pending at the time Section 207 was repealed. At a hearing on July 8, 1971, it was determined that Groupe had received money for those cases as a part of the original $379,908.30 under the contingent fee contract. Because Groupe had already recovered on the cases in question, we hold he would be paid twice if allowed to recover in *quantum meruit* on those same cases. The additional judgment of $200,194 should be reduced by $85,750, the sum total of $41,545 and $44,205.

■■ On cross-appeal Groupe contends the award of $12,509.97 was improper in that it was inconsistent with the facts elicited during the trial and contrary to the findings contained in the decree and to the applicable law. He disputes the $6,037.97 portion of the award because it approximates an amount owed to him on cases he collected between August 7 and August 19, 1969. Nevertheless, it is clear that he agreed to return the fees obtained from the 682 cases where fictitious judgment dates were entered and returned a total of only $10,362.75, leaving $6,037.97 unpaid.

■■ He disputes the award of $2,000 for office expenses and $4,472 for auditing expenses because there was not sufficient evidence to justify the reasonableness of these amounts. However, the record shows that the testimony of Albert Verb with respect to the office expense is undisputed, and the auditor's bill had already been approved by another chancellor, making a total of $6,472 unpaid. Adding the two unpaid amounts totals the $12,509.97 awarded the Director, and we hold the court was correct in so doing.

Secondly, Leonard Groupe contends the court erred by denying his motion for fees and reasonable expenses against the Director for making statements which he knew to be untrue pursuant to section 41 of the Civil Practice Act. Ill. Rev. Stat., ch. 110, § 41.

■■ The allowance of attorneys' fees under section 41 is within the discretion of the trial court (*Horween v. Dubner* (1965), 68 Ill.App.2d 309), and that discretion can be exercised only when the record discloses the evidence of bad faith on the part of the pleader. After reviewing the record, we conclude the chancellor did not abuse his discretion in denying the motion.

For these reasons the judgment of the Circuit Court of Cook County is reversed in part and affirmed in part, and the cause is remanded with directions to modify the judgment as indicated.

Reversed in part; affirmed in part; and the cause remanded with directions.

BURMAN, P. J., and ADESKO, J., concur.