*In re* PINE TOP INSURANCE COMPANY (Mark Boozell, Director of Insurance for the State of Illinois, in his capacity as Statutory Liquidator of Pine Top Insurance Company, Petitioner-Appellant, v. Estate of Pine Top Insurance Company, Respondent-Appellee).

First District (2nd Division)    No. 1—96—0908

Opinion filed September 30, 1997.—Rehearing denied November 4, 1997.

Robinson, Curley & Clayton, P.C., of Chicago (Ellen Robinson, C. Philip Curley, and Alan F. Curley, of counsel), and Peter G. Gallanis, of Office of Special Deputy Receiver, of Chicago, for appellant.

David A. Novoselsky & Associates, of Chicago (David A. Novoselsky, of counsel), for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

This suit involves the liquidation of Pine Top Insurance Company (Pine Top) under the Illinois Insurance Code (215 ILCS 5/187 *et seq.* (West 1994)). The Director of Insurance (Director) as statutory liquidator (liquidator) appeals the trial court's February 5, 1996, order denying approval of a contingency fee to its counsel, Robinson Curley & Clayton, P.C. (Robinson). Because the trial court failed to conduct a reasonableness analysis in ascertaining whether to approve or disapprove the contingency fee agreement, we reverse and remand.

## FACTS

In 1986, Pine Top surrendered to the Illinois Department of Insurance (Department) for liquidation. A liquidator was appointed to marshall the company's assets and distribute them.

On June 20, 1988, the law firm retained by the liquidator, Sidley & Austin (Sidley), filed suit against various officers and directors of Pine Top for negligence and breach of duty (D&O litigation). It also filed suit against the auditing firm of Touche Ross & Co. (Touche) for professional malpractice (Touche litigation). The trial court, pursuant to section 202 of the Insurance Code (215 ILCS 5/202 (West 1994)), approved Sidley's rate of compensation at $125 per hour for attorneys and $45 per hour for paralegals, which is the current rate paid to senior outside counsel.

In 1990, Touche merged with Deloitte, Haskins & Sells, which created a conflict for Sidley. Accordingly, Sidley withdrew and Robinson was substituted in the Touche litigation only. Robinson's rate of compensation was approved at the same rate as Sidley's.

In December of 1990, Judge Gillis approved a rate increase for Sidley in the D&O litigation. The senior outside counsel rate was now $185 per hour for attorneys and $60 per hour for paralegals.

The Director and Robinson began discussing Robinson's fees in late 1991. The general counsel for the Department requested that Robinson submit a proposal. On December 30, 1991, Robinson proposed that its rate be increased to senior outside counsel rates effective January 1, 1991. The Director agreed to increase Robinson's rate, but the terms were left open.

In May of 1992, the Director requested another fee proposal. Robinson outlined three alternatives: (1) an increase to $185 and $60 per hour; (2) a lodestar approach that was similar to fee arrangements in other cases Robinson was handling for the Director; or (3) a reduced contingency fee. The Director chose the third alternative, believing

Robinson would bear the risk of unsuccessful litigation. Robinson agreed and the Director stated he would seek approval at the close of the Touche litigation. At this time, however, no definitive terms were set.

In early to mid 1993, Robinson sought documentation of the fee agreement. At this time, the Director indicated it desired a cap. Robinson proposed, instead of a cap, a reduction in the contingency percentage in return for an immediate increase to the senior outside counsel rate. This proposal was to approximate the fees Robinson would have received from the inception of the Touche litigation if it had received senior outside rates the entire time. The Director agreed and the agreement was memorialized some two years later in a memorandum.

Late in 1993, an unsuccessful settlement conference was held in the Touche litigation. In October of 1994, the parties to the Touche litigation conducted a private mediation with a federal judge. However, no progress was made.

In June of 1995, as trial loomed near, Touche offered $9.5 million to settle, which the liquidator rejected. Since trial was close and presumably the conclusion of the Touche litigation, Robinson and the liquidator documented the final agreement on Robinson's fee. Robinson would receive the increased senior outside counsel rate retroactive to January 1, 1995, and there would be a floor of $10 million before the contingency fee kicked in.

At the end of June, the liquidator presented a petition to approve attorney fees to Judge Berman based on the parties' agreement. Judge Berman approved the rate increase to senior outside counsel, but retroactive only to May 1, 1995; he stated it was Robinson's fault for failing to seek an increase sooner. As to the contingency fee, the judge granted leave for the liquidator to withdraw its petition for approval.

The hearing on this petition was heated and confusing. The liquidator stated that the contingency agreement related to that period of time during which Robinson was being paid less than other outside senior counsel. According to the liquidator, when the issue of settlement arose, in particular the $9.5 million offer from Touche, Judge Berman, without basis or explanation, accused the liquidator of misleading him about the fee agreement.

Director Schact, in an attempt to clarify the negotiations and agreement, addressed the court. He stated he did not seek approval earlier because it was not the right time, the litigation was not progressing forward. Schact advised the judge that the $10 million cap was agreed to before Touche made its $9.5 million offer. The

judge, however, found this arrangement inappropriate, believing that if Touche paid 1 cent over $10 million, Robinson would receive a "bonus." The judge stated that the liquidator should have sought approval of the fee agreement earlier in the proceedings.

Ms. Robinson also addressed the court. She stated that the contingency discussions began in December of 1991. She further stated that the parties agreed not to seek an increase in Robinson's rate but instead to seek a contingency fee at the close of the Touche litigation. Additionally, there was testimony that the $10 million cap was the amount that would bring Robinson's compensation in conformity with receipt of senior outside counsel rates from the inception of the Touche litigation, e.g., it would not amount to a bonus.

Judge Berman stated he would approve a contingency arrangement if it applied against the total recovery, the percentage was lower than one-third, and fees already paid to Robinson were deducted from the contingency fee amount. However, Judge Berman seemed to state he would only approve such an agreement upon verdict, not upon settlement of the case.

Subsequent to this hearing, the Director and Robinson revised the fee agreement in accordance with what they believed Judge Berman stated he would approve. They reduced the percentage to 27.5% and capped the amount at a figure necessary to raise Robinson's rate to equal that of rates for senior outside counsel.

On July 17, 1995, Touche and the liquidator settled. Judge Flanagan entered a good-faith finding and dismissed the suit against Touche with prejudice. On August 17, 1995, Judge Berman approved the settlement. During this hearing, Judge Berman again raised the fee issue and stated that he would not give Robinson one more dime.

On February 5, 1996, the liquidator filed a petition for approval of the contingency fee agreement. It sought fees in the amount of $1,133,587.50.[1] Judge Berman summarily denied this petition and refused to listen to arguments.

## ANALYSIS

### A. JURISDICTION

■ We must first ascertain whether we have jurisdiction. The liquidator contends we do, arguing that the plain language of Supreme Court Rule 304(b)(2) (155 Ill. 2d R. 304(b)(2)), the committee comments, and case law support such a finding. We agree.

---

[1] Had the court approved this amount, Robinson would have been paid a total of $4,739,507.50 for its participation in the Touche litigation. Had it received senior outside rates since the inception of its work for the liquidator, it would have earned $4,897,005.

The plain language of Rule 304(b)(2) dictates this finding. It states: "(b) Judgments and Orders Appealable Without Special Finding. The following judgments and orders are appealable without the finding required for appeals under paragraph (a) of this rule:

***

(2) A judgment or order entered in the administration of a receivership, rehabilitation, liquidation, or other similar proceeding which finally determines a right or status of a party and which is not appealable under Rule 307(a)." 155 Ill. 2d R. 304(b)(2).

The liquidator is clearly a party to the liquidation proceeding. The trial court's order denying the contingency fee to Robinson finally determined the liquidator's status as to its liability for payment of attorney fees. Accordingly, such an order falls within the ambit of subparagraph (2). The drafters of the rule clearly contemplated an appeal in this situation. The committee comments state:

"Subparagraph (2) is comparable in scope to subparagraph (1) [e.g., 'orders that are final in character although entered in comprehensive proceedings that include other matters'] but excepts orders that are appealable as interlocutory orders under Rule 307. Examples of orders covered by subparagraph (2) are an order allowing or disallowing a claim and an order for the payment of fees." 155 Ill. 2d R. 304, Committee Comments.

The order the liquidator is appealing from is an order denying the "payment of fees." Accordingly, based on the committee's intent in drafting this rule, such an order is appealable.

Case law further supports our decision. In particular is *Mar Cement, Inc. v. Diorio Builders, Inc.*, 153 Ill. App. 3d 798 (1987). In *Mar Cement*, a savings and loan dissolution case, the court, in an order dated February 19, 1986, granted fees to the receiver for all time periods prior to March 11, 1982. However, it denied fees subsequent to that date. It continued the matter for a prove up on the awarded fees. On March 20, 1986, the liquidator filed a notice of appeal, seeking reversal of the order denying fees subsequent to March 11, 1982. On March 24, it filed a motion before the circuit court asking it to certify that the order of February 19, 1986, was final and appealable. The court stated that the February 19, 1986, order was final as to the amount of fees prior to March 11, 1982, but that the order was not appealable under Supreme Court Rule 304(b) or 307. The appellate court declined jurisdiction, finding that the February 19, 1986, order was not final and appealable. The court quoted both Rule 304(b)(2) and the committee comments. It then concluded that "an order for the payment of receiver fees which is final in character is appealable under Supreme Court Rule 304(b)(2)." *Mar Cement, Inc.*, 153 Ill. App.

3d at 801. However, the *Mar Cement* order was not final in character according to the court. Although it was final as to fees prior to March 11, 1982, it was not final as to fees generally. The court stated that the test for finality is " 'whether the decree or order appealed from determines the ultimate rights of the parties with respect to distinct matters which have no bearing on other matters left for further consideration.' " *Mar Cement, Inc.*, 153 Ill. App. 3d at 802, quoting *Hoier v. Kaplan*, 313 Ill. 448, 450 (1924). In *Mar Cement*, the issue of fees prior to March 11, 1982, was not distinct from the issue of fees subsequent to that time; the issue was fees generally. Since the amount of fees in general was not finally determined, the appellate court lacked jurisdiction over the appeal. *Mar Cement, Inc.*, 153 Ill. App. 3d at 802-03. In the instant case, unlike *Mar Cement*, the issue of Robinson's fee was final. At the time of Judge Berman's order, he left nothing to be determined at a future date.

Finally, logic and a review of article XIII of the Insurance Code, entitled "Rehabilitation, Liquidation, Conservation and Dissolution of Companies" (Liquidation Act) (215 ILCS 5/187 *et seq.* (West 1994)), demonstrate that to deny jurisdiction at this time would not be prudent. Section 210 details the adjustment and prioritization of claims to be made by the liquidator in settling the estate. For the liquidator to complete this function, he must know the amounts of both the claims and the amounts the estate possesses from which the claims will be paid. To know the amount available for distribution, the liquidator necessarily needs to know the amount of fees to be paid to counsel; amounts that will not be included in the estate. To facilitate these determinations, the drafters of Rule 304 included subparagraph (b)(2) and indicated their intent that fee disputes fall within the ambit of this paragraph. To hold otherwise and order the liquidator to await conclusion of the liquidation proceeding would frustrate the proceeding as well as the purpose of Rule 304. Without a final determination now of the validity of the court's order and, thus, the amount of fees due Robinson, the liquidation proceeding may need to be reopened in the future. If the liquidator is required to await conclusion of the liquidation prior to asserting this appeal, and if he was successful in a subsequent appeal on the fee issue, the liquidation would need to be reopened to distribute or rather "undistribute" claims already paid so that Robinson could then be paid. This is not a logical result. Issues relevant to the amount of the estate available for distribution should be resolved promptly. Clearly, this was the intent when Rule 304(b)(2) was promulgated. The drafters viewed appeals on amounts of claims and fees to be issues that were to be resolved prior to final distribution, resolution of the liquidation, and an order terminating the proceedings.

Based on the above, we conclude that jurisdiction lies with this court.

## B. DIRECTOR'S POWER—FEE AGREEMENT

The liquidator contends that the trial court erred in summarily refusing to approve the contingency fee agreement absent a reasonableness determination.

■ Section 202 governs the Director's retention of counsel. It provides that the Director has authority to retain counsel and:

> "The compensation of each special *** attorney *** shall be fixed and paid by the Director. The Director shall also have the authority to retain and pay attorneys *** as the Director may deem necessary and appropriate. The Director shall fix the rate of compensation of these attorneys *** subject to the approval of the court." 215 ILCS 5/202 (West 1996).[2]

Research has found only one case interpreting this provision, *People ex rel. Baylor v. Multi-State Interinsurance Exchange*, 12 Ill. App. 3d 1058 (1973). In *Baylor*, the court awarded counsel, retained by the Director to collect assessments from policyholders, attorney fees in the amount of $200,194 based on a theory of *quantum meruit*. The parties had a contingency fee agreement between them in which the attorney was paid based on a percentage of the assessments collected. Because the Director believed the attorney improperly collected a large number of assessments, he refused to pay. The trial court disagreed with the Director and awarded fees. On appeal, the liquidator contended that the trial court exceeded its statutory power in awarding fees that were not first approved by the Director. The court, relying on *People ex rel. Lowe v. Marquette National Fire Insurance Co.*, 351 Ill. 516 (1933), stated that the award was proper because although the Director has a statutory duty to set the rate, the "court shall have a veto." *Baylor*, 12 Ill. App. 3d at 1065. The court further stated: "[t]he Liquidator has the power to fix compensation in the first instance, but his determination is always subject to the supervisory power of the court. Any other construction would give the Liquidator immunity against any claim for attorney's fees which he refused to pay." *Baylor*, 12 Ill. App. 3d at 1066.

By its holding, the *Baylor* court implied that the trial court has a right to set fees on its own. However, instead of explaining or expand-

---

[2]Prior to August 1993, this provision provided: "the Director shall have power to *** employ such *** attorneys as may by him be deemed necessary ***. The compensation of every such *** attorney shall be fixed, *** by the Director, all subject to the approval of the court." 215 ILCS 5/202 (West 1992).

ing on the respective duties of the court and the Director, the court simply made the above-quoted comments. Thus, it is not particularly helpful.

The parties have not cited and independent research has not located any cases directly on point. The crux of the issue before us is the standard to apply, both by the trial court and by a reviewing court, in evaluating the Director's decision on the rates for counsel. For the following reasons, we determine that the trial court must conduct a reasonableness analysis of the Director's decision. Implicit in such an analysis is that due consideration must be given to the Director's rate. The standard on review is an abuse of discretion standard. We base our holding on the standards employed in other areas of law where fees are awarded.

In probate proceedings, the trial court must conduct a reasonableness analysis prior to awarding or denying fees. Reasonableness lies within the discretion of the trial court based on the facts and circumstances of each case, and a reviewing court will not disturb the trial court's finding "absent manifest or palpable error, or an abuse of discretion." *Weiss v. Weiss*, 113 Ill. App. 3d 793, 802, 803 (1983). See also *In re Estate of Dyniewicz*, 271 Ill. App. 3d 616, 624-25 (1995). Factors to be analyzed include the size of the estate, the work done, the skill evidenced by the work, the time expended, the success of the efforts, good faith, and the efficiency of administration. *In re Estate of Devoy*, 231 Ill. App. 3d 883, 888 (1992).

Similarly, in "fee-shifting" agreement situations or where a contract provision provides for fees, the trial court too must conduct a reasonableness evaluation. It also makes its reasonableness determination based on various factors and its decision will not be disturbed unless there has been an abuse of discretion. *Heller Financial, Inc. v. Johns-Byrne Co.*, 264 Ill. App. 3d 681, 690 (1994). Factors utilized in these cases include: "the skill and standing of the attorneys employed, the nature of the case, the novelty and difficulty of the issues involved, the degree of responsibility required, the usual and customary charge for the same or similar services in the community, and whether there is a reasonable connection between the fees charged and the litigation." *Harris Trust & Savings Bank v. American National Bank & Trust Co.*, 230 Ill. App. 3d 591, 595-96 (1992).

In class actions, reasonableness of the fee again is the issue. First, the trial court looks to the "(1) the skill and qualifications of the attorneys; (2) the nature of the services performed; (3) the complexity of the undertaking; and, (4) the hourly fee charged for similar services by attorneys with similar skills and qualifications."

*Board of Commissioners of the Bolingbrook Park District v. County of Will,* 154 Ill. App. 3d 395, 398-99 (1987). The court may then consider a "lodestar" request and increase the award it has made based on the above factors by looking to two other factors: "(a) 'the contingent nature of the undertaking' and (b) 'the benefits conferred upon the class.' " *Board of Commissioners,* 154 Ill. App. 3d at 399.

Finally, the Rules of Professional Conduct outline factors to be addressed in analyzing the reasonableness of counsel's fee. They include:

"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent." 134 Ill. 2d R. 1.5.

In *Board of Commissioners,* a class action suit, the appellate court reversed the trial court's reduction and denial of fees, finding that it failed to take into account all relevant factors, in particular the "importance of the benefit to the class." *Board of Commissioners,* 154 Ill. App. 3d at 399. In *Board of Commissioners,* counsel for the class and the Will County State's Attorney agreed upon the amount of fees class counsel should receive following conclusion of the suit. Because a member of the class objected, the trial court conducted a trial on the matter. Ultimately, the trial court reduced the fees and denied additional fees, finding that class counsel had been sufficiently compensated in three related cases in different counties involving the same issue. We reversed, holding that although the trial court enjoys wide discretion in awarding fees, that decision is:

"[P]redicated on the assumption that the trial judge has carefully considered the factors described above and that he has heard testimony and examined statements prepared by the attorneys substantiating the value of the benefits received by the plaintiff class and the hours extended by the attorneys on the case. In class actions, the wide range of discretion given to the trial court makes

it all the more important that the court clearly set out the effect of each factor considered in leading it to decrease the award and relative weight it assigns to each factor in reaching a final determination." *Board of Commissioners*, 154 Ill. App. 3d at 400.

We concluded that, contrary to well-established law, the trial court did not provide reasons and what specific factors justified its reduction of hours and fees. Because of this, the trial court's decision was unreasonable and we granted the amount of fees originally agreed to between class counsel and the State's Attorney. We stated: "[t]hat settlement was not collusive or fraudulent and it was guided by judicial oversight. Due consideration should be extended to the opinion and judgment of the counsel who produced the original settlement figure." *Board of Commissioners*, 154 Ill. App. 3d at 400-01.

■ We find this case instructive. First, it supports our conclusion that the Director's decision on the rate of fees should be accorded due consideration. Unlike the instant case, the agreement in *Board of Commissioners* was accorded due consideration despite the fact no statutory authorization existed for the State's Attorney and class counsel to set the amount of fees. More importantly, *Board of Commissioners* highlights the importance of analyzing factors and setting forth what particular elements are accorded more weight and why when reducing or denying fees. The trial court's detailing of the factors and justifications is even more compelling in liquidation proceedings where the Director is statutorily given power to set counsel's rate and the court decides the rate is inappropriate.

In the instant case, Judge Berman completely failed to conduct a reasonableness analysis of the fee agreement set by the Director. When the Director filed his petition for approval and the court conducted a "hearing," all the court did was summarily deny the petition without hearing argument and without explanation. Based on this, we find the trial court abused its discretion in denying fees to Robinson.

## CONCLUSION

For the foregoing reasons, we reverse and remand to the circuit court of Cook County for proceedings not inconsistent with this decision.

Reversed and remanded with directions.

McNULTY, P.J., and O'MARA FROSSARD, J., concur.