Julia Moone Dean, Appellant, v. Weymouth Kirkland et al., Appellees. John L. Kellogg, Appellee.

Gen. No. 40,499.

Opinion filed October 25, 1939.

E. C. FRANK MEIER, of Chicago, for appellant.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, for appellee; JAY FREDERICK REEVE and J. B. MARTINEAU, both of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

In June, 1927, plaintiff Julia E. Moone, filed an action in the superior court of Cook county against John L. Kellogg, and therein sought to recover dam-

ages for alleged slanderous remarks. On June 6, 1936 (while that action was pending) plaintiff, as Julia Moone Dean, filed her amended complaint in the instant action in the circuit court of Cook county. The members of the law firm of Kirkland, Fleming, Green, Martin & Ellis, an associate of that firm named J. B. Martineau and one Jacob Manassa, described as an investigator, Theodore Hardeen, Jr., an attorney not connected with the said firm, and John L. Kellogg (the defendant in the superior court case) were named as defendants. John L. Kellogg was the only one served with summons in the instant case. He entered his appearance and filed a written motion to dismiss the amended complaint. On April 27, 1938, the circuit court of Cook county entered an order striking the amended complaint and dismissing the cause at plaintiff's costs. At that time the court also declined to allow the plaintiff to file a second amended complaint. This appeal is prosecuted from the judgment dismissing the amended complaint.

The amended complaint consists of one count. It arises out of the slander action filed against John L. Kellogg in the superior court of Cook county. The law firm mentioned was hired to defend that action, and according to the amended declaration filed herein, appeared in behalf of John L. Kellogg, and filed certain pleas therein, "admitted the utterances by the said John L. Kellogg of the slanderous remarks attributed to him and laid to his charge in the declaration in said cause, and filed in addition thereto special pleas claiming justification for alleging that said defamatory statements were true, and alleging that they were true in substance and in fact, and claiming said publication was with good motives and without malice and for justifiable ends, and that said John L. Kellogg in said cause, claimed to have been reliably informed and honestly believed that this plaintiff, who is also the plaintiff in said cause alleged in Paragraph 4, was a crook

and not an honest person, and could not be trusted in business transactions, that she was a woman who induced people to pay her money to which she was not entitled, and that she was a dangerous person with whom no person could safely have business dealings, all of which allegations and pleas said defendants knew to be false and malicious.'' The amended complaint, which we will hereafter designate as the complaint, is (according to plaintiff's brief) grounded on what she charges to be ''an unlawful undertaking or conspiracy to seek unlawful gains by lawful means, tainted with false and malicious motives.'' She charges that the defendants wickedly intended to injure and falsely defame the reputation of the plaintiff and to bring the plaintiff into disrepute and to impute dishonest and criminal conduct on her part and to maliciously and falsely defeat her just right to recover against John L. Kellogg in the action for defamation; that they wickedly and maliciously conspired to and did procure various persons to maliciously and knowingly give false testimony in derogation of plaintiff's reputation, to the end that said John L. Kellogg might prove the pleas that he was justified in uttering the alleged slanderous words; and that the defendants perpetrated the specific acts charged in pursuance of the malicious intent and purpose of the alleged conspiracy. She charges that in furtherance of the conspiracy said Kellogg, together with one Loring V. Estes, during the spring of 1930, gave one John F. Pottinger the sum of $100 in cash and told him to obtain from plaintiff a certain brown bag; that Pottinger gave the $100 to one Dan Charett, to whom the mission was intrusted; that the bag was the property of plaintiff and contained certain documents of great value to plaintiff in the litigation then pending in the superior court; that Charett procured a bag other than the bag that was sought; that when the bag was brought to Kellogg he recognized that it was not the bag that was sought and directed

Pottinger to destroy the bag. The complaint recites that defendants caused a notary public in and for Cook county to issue subpoenas for the purpose of taking depositions and that the law firm sent defendant Martineau and one Al Parrish, who has since died, and defendant Kellogg, to Cincinnati, Ohio, where defendants Kellogg and Martineau interviewed one Howard Blaney on March 22, 1933. The complaint charges that they attempted to induce Blaney to testify falsely against plaintiff and offered Blaney a considerable sum of money if he would so testify and procure other witnesses to testify falsely against plaintiff. The complaint also recites that on April 26, 1933, pursuant to the alleged conspiracy, defendant Martineau approached Meyer L. Cherkas, who was then an attorney for plaintiff, and sought to induce Cherkas to withdraw as such attorney by declaring to him that "Mrs. Dean is a woman not worthy of consideration, and she is a woman of bad repute and cannot be trusted," and invited Cherkas to come to his (Martineau's) office where he would prove the bad reputation of plaintiff; that the appearance of Charles M. Haft as attorney for plaintiff was entered in the defamation action, and that defendant Howard Ellis informed said Haft that he had abundant proof of the truth of the alleged slanderous utterances about which plaintiff complained, and charged that such statements by Ellis were made with the intent to cause Haft to withdraw as attorney for plaintiff; that defendant Manassa, in a conversation with Lieutenant Charles C. Essig of the Chicago police department, invited Lieutenant Essig to come to the law firm's offices, where he would prove to him that plaintiff was a woman of bad repute and not worthy of credit or belief, and that she was a blackmailer and a crook; that J. Fred Reeves, a member of the defendant law firm, appeared before a judge of the municipal court of Chicago, accompanied by said Martineau and said Manassa, in a case there pending entitled *People*

*v. Pack,* wherein plaintiff was the prosecuting witness, and in which the defendant therein was charged with perjury in the taking of a deposition in the cause on the superior court, and said:

" 'I am representing the firm of Kirkland, Fleming, Green & Martin;' my associate, Mr. Martineau of that firm is also here. We are not representing Miss Pack; her attorney is Mr. Hardeen. The reason I am here is, we represent M. Kellogg,' and further stated, 'I am stating though, to Mr. Haft and this lady (referring to the plaintiff) that if there is an application for another warrant, that if there has been obvious perjury here, and some action may be asked for against this lady.' "

The complaint alleged that the meaning of such statement, made in open court in the presence of about 100 persons, was that plaintiff had committed perjury; that it was meant and intended by such statement to intimidate plaintiff against proceeding further in her defamation case, and to injure the character and reputation of plaintiff, and plaintiff avers that there was a technical error in the complaint filed in the municipal court of Chicago against Florabella Pack; that the Assistant State's Attorney on duty in that branch of the court asked leave to amend, which leave was denied, and that such denial was because of the remarks of said Reeves, and that because thereof the State's Attorney was obliged to and did *nolle prosequi* the case; that no evidence was heard in said proceeding; that the defendant therein, Florabella Pack, was discharged; that thereupon Theodore Hardeen, Jr., maliciously intending to injure plaintiff, and with the knowledge, consent and approval of the defendant law firm, brought an action against plaintiff in the superior court of Cook county in the sum of $50,000, charging plaintiff with maliciously prosecuting said Florabella Pack upon an alleged false charge of perjury; that on January 21, 1935, plaintiff and her attorney Charles M. Haft, interviewed Assistant State's Attorney Thomas E. Butler,

in his official capacity as an assistant to the State's Attorney of Cook county, and complained to him (for presentation to the grand jury) of the facts and circumstances of the alleged perjury of said Florabella Pack; that said Butler requested plaintiff to exhibit to him the telegrams and pleadings in the defamation case and the deposition taken therein of Florabella Pack, and that said Butler indicated that there was probable cause for the prosecution of said Florabella Pack on the charge of perjury; that on or about February 20, 1935, defendant Manassa, in the presence of Assistant State's Attorney Butler, Lieutenant Essig, Mr. Haft, plaintiff's attorney, and another woman, declared to the said Assistant State's Attorney that he was not there representing Florabella Pack, but that he was representing the defendant law firm; that no perjury had been committed by Florabella Pack, and that Mrs. Dean was a blackmailer. Continuing, the complaint declares that in the action for malicious prosecution brought by Florabella Pack against plaintiff, defendant Hardeen stated in open court, "This defendant is a blackmailer and has tried to collect money to which she was not entitled, she tried to blackmail Cyrus McCormick"; that on February 20, 1935, in the same cause, Hardeen in open court stated (in speaking of her to the judge) "This woman is a blackmailer"; that in furtherance of the conspiracy, on March 17, 1935, in taking depositions in the defamation case pending in the superior court, defendants Martineau and Ellis falsely and maliciously endeavored to procure the testimony of Estes to testify that he (Estes) had told defendant Kellogg that plaintiff was a blackmailer; that Estes refused to so testify and that on other occasions said defendants endeavored to procure alleged false testimony from said Estes, who refused to testify; that defendants, to support their pleas of justification in the defamation case, proceeded to take the deposition of one Josephine T. Coughlin be-

fore a notary public in Cook county, and procured the testimony of said Josephine T. Coughlin to the effect that plaintiff stole from her a certain partnership contract and a memorandum concerning some equity in some stock; that the Coughlin woman also falsely testified that she was a granddaughter of former Governor Fairbanks of Vermont, and a niece of a former congressman of said state, and that she was a graduate of Vassar College; that such statements were not true, that in fact, she was a laundress in the Paragon Laundry of Chicago; that while employed as a laundress she pleaded guilty to larceny in the year 1913 and was placed on probation; that defendants knew that the Coughlin woman had previously admitted that it was she who signed herself as Margaret Corey, attempting to blackmail Cyrus McCormick; that defendants in a deposition in the defamation case procured the false testimony of Florabella Pack on January 19, 1935; that such testimony was for the purpose of indicating that Florabella Pack had spurned plaintiff when she (Florabella Pack) learned of the alleged improper conduct of plaintiff; that in fact the Pack woman continued to correspond with plaintiff and borrowed money from plaintiff; that defendants also procured the false testimony of various other persons for the purpose of establishing the pleas of justification; that in furtherance of the conspiracy, defendants procured the services of various detectives and detective agencies and proceeded on a course of harassment, abuse, pursuit, slander and other malicious, false and unlawful means in order to deplete her funds so that she could not proceed with her cause of action; that subsequent to the bringing of the malicious prosecution action, defendants attempted to take the testimony of a judge of the municipal court of. Chicago, who, at the instance of plaintiff, had issued the warrant charging the Pack woman with perjury and that defendants actually took the testimony of a deputy clerk of the

municipal court of Chicago. The complaint asks for damages in the sum of $1,000,000, and the concluding paragraph thereof reads as follows:

"That the conduct of the defendants and each thereof was concerted and for the sole and malicious purpose of injuring the character and reputation of this plaintiff maliciously, unjustly, unlawfully and falsely, by means of fabricated and false testimony; and that this plaintiff has been injured thereby in her character and reputation and in her abilities to earn a livelihood such as she was able to do prior to said contrivances of said defendants, and to maliciously harass the said plaintiff in the prosecution of the said causes of action and to defeat the ends of justice, that all of said acts herein alleged were done maliciously and falsely and for the sole purpose of injuring this plaintiff as aforesaid, and in furtherance of the presentation of said fictitious and false defenses as alleged herein."

Plaintiff argues that the motion to dismiss admits all allegations that are well pleaded. On that statement, the parties do not disagree. The motion does not, however, admit conclusions of the pleader. Plaintiff moved to strike certain parts of defendants' brief, which motion has been carefully considered and is now overruled. Defendant in his brief, does allude to some matters outside of the record before us. For instance, our attention is called to the disposition of the defamation case in the superior court. While we would naturally be interested in knowing the result of the trial of that case, in view of the objection we will not consider the same in our opinion.

The first point urged by plaintiff is that "where parties in pursuance of a conspiracy or combination for that purpose, fraudulently make use of legal proceedings to injure another, an action lies against them in the suit of the person injured to recover damages sustained." In considering the point, it is necessary for us to determine the nature of the action brought by

plaintiff. While paragraphs of the complaint charge various separate acts as constituting a conspiracy, we conclude that the gist of the action is that plaintiff was injured by a conspiracy, and that the recitation of the various acts is for the purpose of showing a concert of action. Defendant repels the contention by asserting that the complaint states no cause of action for conspiracy to win the slander suit by false pleas and false testimony, and insists that damage and not conspiracy is the gist of all civil actions. Here it is well to observe that the complaint seeks damages in the sum of $1,000,000 because of injury to her character and reputation and her ability to earn a livelihood "such as she was able to do prior to said contrivances of said defendant," yet the complaint does not indicate what her occupation or business had been. Apparently, the purpose of the alleged conspiracy was to defeat plaintiff in her slander suit by means of false pleadings and false testimony. Our Supreme Court has held that unlawful acts committed in pursuance of a conspiracy, and not the fact of the conspiracy, are the gist of a declaration charging action in trespass on the case for malicious prosecution. (See *Bonney v. King,* 201 Ill. 47; *Lasher v. Littell,* 202 Ill. 551.) We are satisfied that in cases such as the one at bar, the gist of the action is not the conspiracy, but the damage to the plaintiff by the wrongful acts of the defendant. Our Supreme Court has pointed out that such actions are wrongful and actionable, whether the result of conspiracy or not. "As matter of pleading the charge of conspiracy is mere surplusage and only entitled to be looked at as a matter of aggravation, and the insertion of the averment of it does not change the nature of the action at all. It is still an action on the case and to be tried and disposed of accordingly." (*Lasher v. Littell, supra.*) The statement of plaintiff's theory of her case indicates that she considers the acts of defendant an attempt to "seek unlawful gains by lawful means."

It is well established, however, that "Bad motive, by itself, then, is no tort. Malicious motives make a bad act worse, but they cannot make that a wrong which in its own essence is lawful. 'An act which does not amount to a legal injury cannot be actionable because it is done with a bad intent.' 'Where one exercises a legal right only, the motive which actuates him is immaterial.' When in legal pleadings the defendant is charged with having wrongfully and unlawfully done the act complained of, the words are only words of vituperation, and amount to nothing unless a cause of action is otherwise alleged." (Section 534, vol. 3, 4th Ed. Cooley on Torts.) An analysis of the complaint plainly indicates that what plaintiff complains of is the action of defendants in defending the action for defamation by means of false and malicious pleadings and false and malicious testimony. In our opinion, the proposition raised has been settled by the opinion rendered in this court in the case of *Hocker v. Welti,* 239 Ill. App. 392. There, plaintiff, a former inmate of an insane asylum, filed a declaration in which he alleged that the defendants conspired to have him declared insane and incarcerated in an institution by means of false testimony. A demurrer to the declaration was sustained, and on appeal this court, at p. 396, said:

"Another reason is even more conclusive. It is that if the declaration can be considered not as an action for malicious prosecution, but merely as a statement of a cause of action for damages resulting solely from the alleged acts of defendants in suborning witnesses to swear falsely in the insanity proceeding and thereby cause the finding of insanity to be entered against the plaintiff, the declaration is clearly demurrable, because it has been uniformly held that such an action cannot be maintained. (*Stevens v. Rowe,* 59 N. H. 578; *Smith v. Lewis,* 3 Johns. [N. Y.] 157; *Taylor v. Bidwell,* 65 Cal. 489; *Young v. Leach,* 27 App. Div. 293,

50 N. Y. Supp. 670.) In 24 L. R. A. (N. S.) 265, there is a case note upon the subject of perjury and subornation of perjury as grounds for civil actions. The annotator there states, in substance, that the great weight of authority is to the effect that no action lies at common law for damage sustained by reason of perjury committed in a former suit where (as in this case) a party to such suit is also a party to the subsequent action for damages. Many cases are cited to that effect, some of which we have examined. The same note says the same rule applies to actions for damages for suborning witnesses to swear falsely, citing especially the opinion of Kent, C. J., in *Smith v. Lewis, supra,* holding that such an action would be 'against public policy and . . . productive of endless litigation.' The only case we have found in this State on this question is *Bell v. Senneff,* 83 Ill. 122, where doubt is expressed as to whether such an action can be maintained, but the point was not squarely decided, for the reason that the question had not been discussed in that case. In *Stevens v. Rowe, supra,* it was said: 'An action by the defeated party cannot . . . be maintained against a witness or witnesses for giving false testimony in favor of his opponent. Public policy and the safe administration of justice require that witnesses, who are a necessary part of the judicial machinery, be privileged against any restraint, excepting that imposed by the penalty for perjury. Though not a party to the former suit and judgment, the merits of that judgment cannot be re-examined by a trial of the witness' testimony in a suit against him. The procedure, if permitted, would encourage and multiply vexatious suits and lead to interminable litigation.'

"For the reasons stated, we are of the opinion that the demurrer was properly sustained, and therefore the judgment is affirmed."

It will be noted that plaintiff does not allege a conspiracy to destroy her business by means of slander.

In *Doremus v. Hennessy,* 176 Ill. 608, plaintiff brought an action for damages on account of injuries that she suffered because of a combination of employers in the laundry business, who by intimidation and other unlawful acts, caused her to suffer losses in her said business, and the court, at p. 614, said: "Losses willfully caused by another, from motives of malice, to one who seeks to exercise and enjoy the fruits and advantages of his own enterprise, industry, skill and credit, will sustain an action. It is clear that it is unlawful and actionable for one man, from unlawful motives, to interfere with another's trade by fraud or misrepresentation, or by molesting his customers or those who would be customers, or by preventing others from working for him or causing them to leave his employ by fraud or misrepresentation or physical or moral intimidation or persuasion, with an intent to inflict an injury which causes loss. A conspiracy may, when accompanied by an overt act, create a liability, by reason of the fact that one or more conspirators may do an unlawful act which causes damage to another, by which all those engaged in the conspiracy for the accomplishment of the purpose for which the injury was done, and which was done in pursuance of the conspiracy, would be alike liable, whether actively engaged in causing the loss or not. For acts illegally done in pursuance of such conspiracy, and consequent loss, a liability may exist against all of the conspirators. . . . Malice, as here used, does not merely mean an intent to harm, but means an intent to do a wrongful harm and injury. An intent to do a wrongful harm and injury is unlawful, and if a wrongful act is done to the detriment of the right of another it is malicious, and an act maliciously done, with the intent and purpose of injuring another, is not lawful competition."

In the recent case of *Kovar v. Bremer,* 281 Ill. App. 505, appellant, a minister of the gospel and pastor of a church, filed a complaint in which he sought damages

because defendants conspired to defame him and accomplish his ruin as a minister of the gospel; that as a part of their common plan, and in pursuance of the said conspiracy, they committed various overt acts. In consequence, he lost his position as pastor of the church, was suspended from the ministry, lost his salary of $1,200 annually, and was otherwise injured in his name, reputation and credit. A motion to dismiss the complaint was sustained, and on appeal the judgment was reversed and the cause remanded. There the court permitted the joinder in a single count of several separate slanders because "each count was intended to and did charge a conspiracy to ruin appellant in his calling and profession." In the instant case, it is obvious that the complaint does not attempt to show any damage to the plaintiff in her profession, calling or business because of the alleged conspiracy. The well reasoned opinion in the *Hocker v. Welti* case when applied to the facts before us, convinces us (viewing the complaint as an attempt to state a single cause of action) that the court was right in sustaining the motion to dismiss. We are of the opinion that an action by a litigant will not lie against an opponent or against a witness where the gravamen of the charge is that the defendant has been guilty of perjury, or has suborned or attempted to suborn perjury.

While our discussion of the subject of conspiracy as applied to the complaint, disposes of the case, nevertheless, we shall briefly consider the separate acts charged. Our remarks as to the *Hocker v. Welti* case, apply to the charge that the defendants conspired in the taking of five false and perjured depositions, and conspired in the attempt to take two other false depositions. As to the allegation that the defendants attempted to possess themselves of plaintiff's brown bag, we merely call attention to the admission that the alleged attempt was unsuccessful. The charge that the institution of an action by Miss Pack against plaintiff,

wherein plaintiff was accused of malicious prosecution, does not state a cause of action. Plaintiff concedes that her complaint against Miss Pack, filed in the municipal court of Chicago, contained "technical inaccuracies," and that the trial judge in the municipal court allowed a motion by the State's Attorney for a *nolle prosequi.* The complaint is silent as to the outcome of the action by Miss Pack against plaintiff; nor is there any allegation that she was arrested or her property seized. Certainly no one can successfully contend that there was anything unlawful in the attempt to take the deposition of Judge SCHEFFLER and in the taking of the deposition of the warrant clerk. There was no abuse of process in the filing of the pleas of justification, which plaintiff alleges are false and malicious. Whether the pleas were false and malicious, would be determined in the trial of the defamation action. It is appropriate to point out that section 41 of the Civil Practice Act (sec. 165, ch. 110, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 104.041]) provides that "Allegations and denials, made without reasonable cause and not in good faith, and found to be untrue, shall subject the party pleading the same to the payment of such reasonable expenses, to be summarily taxed by the court at the trial, as may have been actually incurred by the other party, by reason of such untrue pleading." It must be assumed that attorneys in filing pleadings, have due regard for their duties and responsibilities as officers of the court. Attorneys in filing pleadings are permitted to exercise a broad discretion, based on honest judgment, from the facts presented to them. If the charge that defendants filed a false and malicious plea of justification be viewed as an action sounding in libel, our view is that the words constituting the alleged libel were published in a judicial proceeding and are presumed to be pertinent and material. "Whatever is said or written in a legal proceeding, pertinent and material to the matter in controversy,

510

is privileged, and no action can be maintained upon it.'' (*McDavitt v. Boyer,* 169 Ill. 475, 483.) It was incumbent on her to plead in detail the judicial proceedings in which the words were published, so that the court in the instant action could determine from the context whether the language was material. This she failed to do. Considering the complaint from the standpoint of slander, we observe that the statement by defendant Reeves was published in the course of judicial proceedings in the municipal court of Chicago, and in the absence of any allegation by plaintiff disclosing the entire context, the statements are presumptively privileged. Nor do we believe that the language used by defendant Reeves amounted to a charge of perjury. The statement attributed to defendant Hardeen was made in open court in connection with procedure in the case of *Pack v. Dean.* It is apparent that the statement was material. It was made during the course of judicial proceedings. Here likewise it was incumbent upon plaintiff to plead the proceedings in detail so that the court could ascertain from the context whether the statements made were material. It is difficult to comprehend what criticism can be leveled at the conduct of attorneys Ellis and Martineau in their conferences with attorneys Cherkas and Haft. The statements attributed to these defendants amounted to a reiteration of the pleas of justification. Discussions between attorneys representing opposing parties should not be discouraged. Such discussions have a tendency to limit the issues or to settle the litigation, thereby saving the time of the court. The statements of attorneys Ellis and Martineau were in accordance with their duties to their clients and certainly were pertinent in the action that was pending. It would be contrary to public policy to penalize attorneys by making them respond in damages under the circumstances disclosed by the complaint. The alleged false statement to the police by defendant Manassa was privileged. It was a communication to the public

authorities charged with the enforcement of criminal justice, of information concerning an alleged crime, and was privileged.

Finally, plaintiff maintains that the court erred in denying leave to file a second amended complaint. The record does not indicate what the character of the proposed amendments would be, nor has the point been argued. The concluding paragraph of her brief asks that this court reverse the judgment of the trial court and remand the cause with directions that defendant answer and proceed to trial, and in the alternative (should this court determine that the complaint is insufficient in law), that we reverse the order sustaining the motion to strike the amended complaint and direct the trial court to grant leave to plaintiff to amend the same to conform with such suggestions as this court may direct. Pleadings are drafted and filed by the parties. We have held that the complaint is vulnerable to a motion to dismiss. From aught that appears in the record amendments would be unavailing. The defects in the complaint do not go to the form thereof but to the substance. There was no abuse of discretion in declining to permit further amendments to the complaint.

As so well expressed in the *Hocker v. Welti* case, the tactics pursued by plaintiff in the case at bar would encourage and multiply vexatious suits and lead to interminable litigation. Each law suit would give birth to an infinite series of suits. Brushing aside the conclusions in the complaint, apparently all that the defendants did was to endeavor to perform their duties in behalf of their clients and to set up an appropriate defense so that the matter in controversy could be determined according to the law of the land. The court was right in striking the complaint and dismissing the action. Therefore, the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

Denis E. Sullivan, P. J., and Hebel, J., concur.