DOLORES S. DUDANAS, Individually and as Parent and Guardian ad Litem of Shari Dudanas, a Minor, Plaintiff-Appellant, *v.* SUSAN PLATE, Defendant-Appellee.

First District (5th Division)    No. 61400

Opinion filed December 10, 1976.

Dowd, Dowd and Dowd, of Chicago (Michael E. Dowd and Philip J. McGuire, of counsel), for appellant.

Robert D. McHugh, of Barish, McHugh & Dod, of Chicago, for appellee.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Plaintiff appeals from a jury verdict of $10,000 for personal injuries sustained by Shari Dudanas, a minor, in an automobile collision and from a denial of her post-trial motion for costs and attorneys' fees pursuant to section 41 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 41).

On December 13, 1970, plaintiff was driving her motor vehicle northbound on Mannheim Road in Des Plaines. Her daughter, Shari, who was then 11 years old, was seated in the right front passenger seat. At the Touhy Avenue intersection plaintiff's automobile collided with an eastbound automobile driven by defendant. The front of plaintiff's vehicle struck the right side of defendant's automobile, causing Shari to be thrown forward into the windshield.

At trial Joyce Simeone, a passenger in defendant's vehicle, testified that defendant had proceeded into the intersection against a red traffic signal for eastbound traffic. The other witnesses to the occurrence called by plaintiff stated that the traffic signal was green for northbound traffic. Plaintiff and a police officer who arrived at the accident scene shortly after the collision testified that defendant had admitted to them that she had gone through a red light.

Dr. J. Ralph Seaton, the plastic surgeon who treated Shari, testified that his initial treatment took place in the emergency room of Lutheran General Hospital shortly after the collision. Pieces of glass were removed from Shari's face, and approximately 130 sutures were used to close several lacerations on her face. There was scarring of the right upper eyelid, the base of the nose and the corner of the mouth. Surgery was required to reduce the fracture, and a scar revision left one eyelid more full than the other. Dr. Seaton stated that further surgery would not improve the appearance of the permanent scars. The redness around the scar tissue had faded well but was still visible.

Shari Dudanas testified that she was not wearing a seat belt at the time of the collision although the car was equipped with belts and she understood how they were to be used. She had used seat belts on previous occasions and had been told by her mother to wear a seat belt because it would be "safe" and "good."

L. H. Nagler, a member of the American Association of Automotive Medicine and a consultant on automotive safety with a special interest in seat belts, was called as an expert witness by plaintiff. He stated that the primary purpose of seat belts was to prevent the ejection of the occupant either into the windshield or through an open door of the vehicle in the event of a collision. In response to a hypothetical question based upon the facts of the collision, the witness stated that had the occupant in the right front passenger seat been "wearing a seat belt properly adjusted or maybe loosely adjusted, she still would have contacted the windshield under the force of the collision." On cross-examination Mr. Nagler stated that the *top of the head* would have impacted the windshield and that there might have been a slight reduction in the speed at which the person hit the windshield, but that the seat belt would not have caused enough of a reduction to prevent the windshield from being broken.

Defendant was the only witness for the defense. She testified that she was familiar with the intersection at Touhy Avenue and Mannheim Road and knew that traffic was directed there by traffic control signals. She stated that the signal was green for her direction of travel prior to her entry into the intersection and remained green as she entered.

At the close of the evidence an instruction was given to the jury over the plaintiff's objections that the question of whether Shari's injuries might have been lessened if a seat belt had been used could be considered by them in determining the amount of her compensation. The court also gave an instruction which stated that the issue of contributory negligence did not apply to Shari, and that her failure to use a seat belt should not be considered in determining the issue of liability. The jury returned a verdict finding defendant liable and awarding plaintiff $10,000 in compensation for Shari's injuries.[1] Plaintiff's motion for a new trial on the issue of Shari's damages was denied.

Subsequent to trial plaintiff filed a motion for costs and attorneys' fees under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 41). The motion alleged that defendant's answer contained denials not made in good faith, and that the denials were found to be untrue by reason of the jury verdict. The court denied this motion. Plaintiff then brought this appeal from the denial of her motion for costs and from the denial of the motion for a new trial on the issue of damages.

OPINION

The first issue presented for our determination is whether the testimony received at trial was sufficient to justify an instruction to the jury that

---

[1] Shari's medical expenses were included as an item of her mother's damages and thus were not considered as an element of this award.

allowed them to consider in their calculation of damages whether any element of Shari Dudanas' injuries might have been lessened if she had used her seat belt.

The admissibility of evidence on the use or nonuse of seat belts was first considered by an Illinois court in *Mount v. McClellan* (1968), 91 Ill. App. 2d 1, 234 N.E.2d 329. That court examined cases from other jurisdictions which had held such evidence admissible as a factor in determining the duty of care (*Bentzler v. Braun* (1967), 34 Wis. 2d 362, 149 N.W.2d 626; *Sams v. Sams* (1966), 247 S.C. 467, 148 S.E.2d 154) and from jurisdictions which had wholly excluded such evidence (*Brown v. Kendrick* (Fla. App. 1966), 192 So. 2d 49). The *Mount* court then concluded that the better view favored admissibility of the evidence but stated that "this element should be limited to the damage issue of the case and should not be considered by the trier of facts in determining the liability issue." 91 Ill. App. 2d 1, 5, 234 N.E.2d 329, 331.

Although there is still a sharp split among the States as to the admissibility and weight to be accorded to seat belt evidence (see 15 A.L.R.3d 1428 (1967)), subsequent Illinois cases have adhered to the principle announced in *Mount* and have consistently held that the seat belt defense could not be established on the issue of contributory negligence (*Josel v. Rossi* (1972), 7 Ill. App. 3d 1091, 288 N.E.2d 677; *Blitz v. Checker Taxi Co.* (1972), 8 Ill. App. 3d 361, 290 N.E.2d 291; *Atz v. Goss* (1974), 21 Ill. App. 3d 878, 316 N.E.2d 29). Moreover, an instruction on the seat belt defense, even when limited to the issue of damages, has been held to be error when the instruction or the closing argument could have so confused the jury as to lead them "to consider the issues of contributory negligence and mitigation of damages as a single question whose answer was to be determined in part by whether plaintiff did or did not wear a seat belt." *Yocco v. Barris* (1973), 16 Ill. App. 3d 113, 117, 305 N.E.2d 584; see also *Allison v. Howell* (1974), 22 Ill. App. 3d 287, 291, 317 N.E.2d 379.

In *Hale v. Cravens* (1970), 129 Ill. App. 2d 466, 477, 263 N.E.2d 593, it was announced that "an instruction as to the existence or nonexistence, use or nonuse of a seat belt would be proper with reference to damages only when the record establishes by competent evidence that the damages may have been mitigated if a seat belt had been in existence and used."

Thus, the narrow issue before us in this case is whether the testimony of plaintiff's seat belt expert constituted competent evidence of a causal connection between Shari's nonuse of available seat belts and the injuries and damages sustained.

It is plaintiff's contention that only expert medical testimony would constitute competent evidence sufficient to warrant a seat belt instruction on the issue of mitigation of damages. No Illinois court has decided what

constitutes competent evidence in a case of this kind or to have considered plaintiff's precise argument.

The cases cited by plaintiff do not resolve the issue raised in this case. In *Schomer v. Madigan* (1970), 120 Ill. App. 2d 107, 109, 255 N.E.2d 620, 621, a seat belt instruction was held to be error because the record was "completely silent as to whether the plaintiff did or did not wear a seat belt. A jury verdict finding either way on this issue would be pure speculation based upon no evidence in this record. The given instruction invited the jury to operate in a vacuum."

Seat belt instructions were also held to be error where the vehicle in which plaintiffs were riding was not equipped with seat belts (*Hale*) and where there was "no evidence in the record to support either mitigation or aggravation of injuries from the use or nonuse of seat belts." (*Kravenas v. Algonquin Township* (1973), 13 Ill. App. 3d 1000, 1001, 301 N.E.2d 490.) In *Probus v. Brown* (1975), 33 Ill. App. 3d 639, 338 N.E.2d 231, a seat belt instruction was held to have been properly refused where there was neither evidence that the automobile was equipped with seat belts nor that plaintiff's damages might have been mitigated by their use.

In *Heiser v. Chastain* (1972), 6 Ill. App. 3d 552, 285 N.E.2d 601, plaintiff was injured when she was thrown from her seat in a taxi by the force of an impact with another vehicle. At trial she testified that she grabbed for something to hang on to at the time of the impact, and her physician testified that her fracture was caused by a blow and would not have been affected by the use of a seat belt. The driver testified to the distance between the front and back seats of the taxi. The court found that this evidence failed to establish that damages might have been mitigated by the use of a seat belt.

The limitations on the use of seat belt evidence in Illinois have been discussed most exhaustively in *Eichorn v. Olson* (1975), 32 Ill. App. 3d 587, 593, 335 N.E.2d 774. The court examined the evolution of the seat belt defense and reiterated the rule that a seat belt instruction should not be given to a jury unless a defendant can establish, by competent evidence, a causal connection between the injury sustained and plaintiff's failure to use an available seat belt. The court said:

> "Thus it is not sufficient to show the plaintiff's failure to buckle-up. [Citations.] Something more is required. The difficulty is that in most cases, including those in Illinois, the evidence did not establish that the damages might have been mitigated if a seat belt had been used. [Citations.]"

Defendants have often attempted to surmount this difficulty by the use of expert testimony to establish the missing causal link (53 Marq. L. Rev. 191, 198 (1970)) as in the instant case where defendant relies on the

testimony of plaintiff's expert witness. However, an examination of the Illinois seat belt cases where similar expert testimony was offered does not reveal whether the "competent evidence" standard can be met only by expert testimony, and if so, whether such expert testimony must be medical in nature.

In the seminal decision on the seat belt issue (*Mount v. McClellan* (1968), 91 Ill. App. 2d 1, 5), the court seemed to imply that expert testimony was not necessarily a prerequisite to jury consideration of the seat belt issue:

> "The use, or nonuse of seat belts, and expert testimony, *if any*, in relation thereto, is a circumstance which the trier of facts may consider, together with all other facts in evidence, in arriving at its conclusion as to whether the plaintiff has exercised due care, not only to avoid injury to himself, but to mitigate any injury he would likely sustain." (Emphasis added.)

However, *Mount* has been criticized in subsequent decisions for its somewhat imprecise use of language (*Josel*), and the tendency has been to limit the case to its narrow holding and to reject further pronouncements as *dicta*.[2] Moreover, *Mount* was decided before the court articulated the rule requiring proof of a causal connection by competent evidence in *Hale*.

In Schomer plaintiff called a mechanic as a seat belt expert who testified as to his own height and weight, and to the effect of the seat belt when the passenger seat was forward or back. Defendant attempted to rely on this testimony to support the seat belt instruction given to the jury. However, the court pointed out that the mechanic's testimony was not correlated to the height and weight of plaintiff and did not "identify with any issue in this record. The testimony is devoid of probative value * * * and furnishes no basis for the instruction here given." (120 Ill. App. 2d 107, 111, 255 N.E.2d 620, 622.) This situation is unlike the instant case where the expert specifically testified to the effect of seat belts on the injuries sustained by Shari Dudanas.

In *Josel* defendant called an automotive safety expert who had worked at designing and testing seat belts. The witness testified over plaintiff's objections that plaintiff would not have sustained injuries to her lower extremities had she worn a seat belt. This court commented that the hypothetical question posed to the expert should have been phrased differently in order to eliminate irrelevant material but did not have occasion to consider the admissibility or the competency of the expert testimony. The decision to reverse and remand was based solely on the

---

[2] *Mount* held only that evidence that a plaintiff's car was not equipped with seat belts was admissible in evidence and could be considered by the jury on the question of damages only. *Schomer.*

conclusion that one instruction of the court erroneously equated plaintiff's nonuse of seat belts with contributory negligence.

Finally, in *Oudshoorn v. Warsaw Trucking Co.* (1976), 38 Ill. App. 3d 920, 349 N.E.2d 648, plaintiff presented an expert medical witness who testified in substance that plaintiff's damages would have been worsened had she worn a seat belt because of the resulting abdominal injuries. Defendants objected that there was no showing that the doctor was qualified as a seat belt expert. This contention was rejected because of waiver and because the qualifications of an expert are discretionary with the trial court. *People v. Jennings* (1911), 252 Ill. 534, 96 N.E. 1077.

None of the above cases reached the issue presented in this case. An exhaustive search of the authorities from other jurisdictions, however, has disclosed a case with reasoning which in our view is dispositive of this appeal. In *Spier v. Barker* (1974), 35 N.Y.2d 444, 323 N.E.2d 164, 363 N.Y.S.2d 916, the New York Court of Appeals, that State's highest tribunal, considered a situation analogous to the case at bar. In a case of first impression in that State the court considered the effect of a plaintiff's failure to wear a seat belt on her right to recover for personal injuries sustained in a motor vehicle accident.

The plaintiff's automobile in *Spier* was struck on the left front portion of the vehicle, and as a result of the impact plaintiff was ejected from her vehicle which then rolled over her, pinning her beneath the rear wheel. The automobile was equipped with seat belts although plaintiff was not using them at the time of the accident.

At trial defendants called as an expert witness a professor of mechanical and aerospace engineering who had also been previously employed in the field of accident reconstruction. He had an extensive background in the use of seat belts in both the aircraft and automotive industries. The expert testified generally to the efficacy of seat belts "in preventing or alleviating injury," and after reviewing photographs of the vehicles stated "that had the plaintiff been wearing a seat belt, she would not have been ejected from her automobile; and that had she not been ejected, she probably would not have been seriously injured." 35 N.Y.2d 444, 447-48, 323 N.E.2d 164, 166, 363 N.Y.S.2d 916, 918.

The trial court charged the jury that it should not award any damages for injuries that would have been avoided by the use of a seat belt. A verdict was returned against plaintiff.[3]

■■ The court of appeals, citing *Mount* and using strikingly similar language, adopted the rule that a plaintiff should not be permitted to

---

[3] Despite the absence of any damage question, the court of appeals considered the seat belt issue because the appellate division had expressly disapproved the trial court's seat belt instruction and had stated that reversible error would have been committed by such an instruction had the issue of liability been resolved in favor of plaintiff.

recover damages for those injuries which a seat belt would have obviated. The court also decided that the seat belt issue "should not be submitted to the jury unless the defendant can demonstrate, by competent evidence, a causal connection between the plaintiff's nonuse of an available seat belt and the injuries and damages sustained." 35 N.Y.2d 444, 450, 323 N.E.2d 164, 167, 363 N.Y.S.2d 916, 920; *cf.* our court's similar language in *Hale;* see also Kircher, *The Seat Belt Defense—State of the Law,* 53 Marq. L. Rev. 172, 186 (1970).

In *Spier* the only evidence demonstrating such a causal connection was the testimony of defendant's seat belt expert that plaintiff would have remained in her vehicle had she used her seat belt and would have sustained only minor injuries. The court held, nevertheless, that the evidence was sufficient to show a causal connection and that "the trial court properly submitted this issue to the jury." 35 N.Y.2d 444, 453, 323 N.E.2d 164, 169, 363 N.Y.S.2d 916, 923.

A contention discussed in *Spier* and raised by plaintiff here was that medical evidence should be required on the issue of damages properly apportionable to the nonuse of a seat belt. In *Schomer* the court reversed because, *inter alia,* the seat belt instruction invited the jury "to apportion the damages without any medical evidence one way or the other on the issue of her injuries or damages properly apportionable. Apportionment is improper where there is no reasonable means of apportionment or no standard by which apportionment can be made as shown by the evidence." 120 Ill. App. 2d 107, 110, 255 N.E.2d 620, 622.

In *Spier* the court put this argument into its proper perspective:

> "Another objection frequently raised is that the jury will be unable to segregate the injuries caused by the initial impact from the injuries caused by the plaintiff's failure to fasten his seat belt. In addition to underestimating the abilities of those trained in the field of accident reconstruction, this argument fails to consider other instances in which the jury is permitted to apportion damages (i.e., as between an original tort-feasor and a physician who negligently treats the original injury). Furthermore, if the defendant is unable to show that the seat belt would have prevented some of the plaintiff's injuries, then the trial court ought not submit the issue to the jury." 35 N.Y.2d 444, 452-53, 323 N.E.2d 164, 169, 363 N.Y.S.2d 916, 922.

In the instant case the expert witness offered testimony that the top of Shari's head, rather than her face, would have struck the windshield had she worn a seat belt properly fastened. The jury could therefore reasonably have concluded that they should not award damages for Shari's facial injuries.

■■ Thus, we conclude that the twofold test set forth in *Eichorn* was

satisfied in this case. The evidence showed that (1) Shari Dudanas failed to wear an available seat belt and (2) established a causal connection between her nonuse of the seat belt and the injuries and damages sustained. Accordingly, we hold that the trial court properly submitted the seat belt instruction to the jury.[4]

Two other related arguments presented by plaintiff may be disposed of briefly. Plaintiff contends that the burden was on defendant to produce the evidence on the seat belt issue, and that defendant failed to do so. This claim is without merit. It is well settled that evidence admitted into a case is available for all purposes, and every party is entitled to the benefit of all evidence whether produced by him or his adversary. *Morris v. Central West Casualty Co.* (1932), 351 Ill. 40, 183 N.E. 595; see also Illinois Pattern Jury Instructions, Civil (2d ed. 1971), No. 1.02.

■■ Plaintiff's final point is that the jury was misled by defendant's counsel in his opening argument. Specifically, plaintiff complains of counsel's statement to the jury that "the evidence would show that if she had been wearing a seat belt the injury she had received would have been minimized." It is claimed that this was improper because only defendant subsequently testified for the defense. However, plaintiff had already called an expert witness whose testimony produced the evidence predicted by defense counsel. Counsel made no promise to call a particular witness or to elicit specific testimony. We have concluded here that the evidence did show that Shari's injuries would have been minimized by the use of a seat belt, and thus plaintiff's claim that the verdict was the result of jury confusion must also be rejected.

Plaintiff also contends that the trial court erred in refusing to award costs and attorneys' fees pursuant to section 41 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 41), which provides as follows:

> "Allegations and denials, made without reasonable cause and not in good faith, and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court at the trial."

Plaintiff's complaint alleged, *inter alia,* that defendant had failed to obey the traffic signals at the intersection. This allegation was denied in defendant's answer. Plaintiff's motion is based on the theory that this denial was not made in good faith and was found to be untrue by virtue of the jury verdict for plaintiff. Defendant maintained at her deposition and again in her testimony at trial that she entered the intersection with a

---

[4] We expressly refrain from deciding the correctness of the language of the instruction as submitted by the court to the jury. Counsel for plaintiff conceded on oral argument that no objection was made at trial to the actual wording of the instruction, and we therefore deal only with the sufficiency of the evidence to support the giving of that instruction.

green light. This testimony was contradicted by both Shari and her mother, by the investigating officer, who stated that the defendant had admitted at the scene of the accident that she had gone through a red light, and by Joyce Simeone, one of the passengers in defendant's automobile, who testified at trial that defendant entered the intersection on a red light.

Joyce Simeone also gave a statement to defendant's insurance company which included the following passage:

"Q: Describe in your own words how the accident occurred.

A: We went through a red light."

This statement was never produced by defendant. Plaintiff obtained the statement prior to trial from a second insurance company, which had received it pursuant to a separate proceeding involving the property damage claims. During the trial the court conducted an inquiry into the circumstances surrounding the nonproduction of this statement, and plaintiff was allowed to rehabilitate Joyce Simeone with it. After trial plaintiff presented her section 41 motion. The court denied this motion after full argument.

■■ Section 41 was enacted to prevent the abuse of the judicial process. (*Murczek v. Powers Label Co.* (1975), 31 Ill. App. 3d 939, 943, 335 N.E.2d 172.) Although this statute has been primarily invoked by our courts to penalize the litigant who brings vexatious or harassing actions based upon false statements or without legal foundation (*Ready v. Ready* (1961) 33 Ill. App. 2d 145, 161, 178 N.E.2d 650), relief has also been granted to plaintiffs where frivolous denials were made by the defendant (*Lipscomb v. Coppage* (1963), 44 Ill. App. 2d 430, 197 N.E.2d 48). However, section 41 is penal in nature and should be invoked only in those cases falling strictly within its terms. (*Murczek* at 943.) Allowance of fees by the trial court is discretionary, but the court can only exercise such discretion when the record discloses evidence of bad faith. (*Grandys v. Spring Soft Water Conditioning Co.* (1968), 101 Ill. App. 2d 225, 242 N.E.2d 454.) Even under those circumstances where bad faith is present, the trial court is not required to award costs or fees. *Thomas v. Thomas* (1974), 23 Ill. App. 3d 936, 939, 321 N.E.2d 159.

The burden of proof is on the petitioner to show that the statements made or the allegations denied were without reasonable cause and not in good faith. *Horween v. Dubner* (1965), 68 Ill. App. 2d 309, 319, 216 N.E.2d 288.

■■ We have examined the record and do not believe that the trial court abused its discretion in refusing to award costs and attorneys' fees to plaintiff. Plaintiff made no showing that the nondisclosure of the Simeone statement was deliberate, or that defendant's assertion that her traffic signal was green was known to be false. The mere rendition of a verdict

against a defendant in a negligence action does not satisfy the burden of proof of a petitioner to show that the denials of negligence were untrue, without reasonable cause and not in good faith. *May v. Sears, Roebuck & Co.* (1968), 96 Ill. App. 2d 359, 238 N.E.2d 600 (abstract).

Plaintiff argues that defendant did not satisfactorily explain the nonproduction of the Simeone statement. This contention is without merit. Defendant was not required to present any evidence as to whether she acted in good faith until plaintiff sustained her burden of proof. (*Horween.*) Plaintiff also contends that since the statement was in the possession of defendant at the time her answer was filed, its nonproduction demonstrates that the denials in the answer were known to be untrue and were thus made in bad faith. We cannot agree. "Attorneys in filing pleadings are permitted to exercise a broad discretion, based on honest judgment, from the facts presented to them." (*Dean v. Kirkland* (1939), 301 Ill. App. 495, 509, 23 N.E.2d 180.) The mere knowledge that testimony contrary to her own version of events might be forthcoming at trial did not require defendant to abandon her defense or admit the allegations of the complaint.

■■ Moreover, defendant's attorney represented to the court that he was unaware of the existence of the Simeone statement, and that his file did not contain such a statement. Plaintiff offered no proof to the contrary, and the trial court apparently accepted counsel's explanation. Confusion or an honest mistake should not be grounds for a finding of bad faith. We assume that attorneys, in filing pleadings, "have due regard for their duties and responsibilities as officers of the court." (*Dean* at 509.) The trial court, therefore, correctly denied plaintiff's section 41 petition.

The judgment of the circuit court and the orders denying a new trial on the issue of damages and denying the petition for an award of costs and attorneys' fees are affirmed.

Affirmed.

DOWNING and SULLIVAN, JJ., concur.