BILLIE R. RUNYON *et al.*, Co-Administrators of the Estate of Philip David Runyon, Deceased, Plaintiffs-Appellants, *v.* JOEY D. RICH *et al.*, Defendants-Appellees.

Fourth District   No. 4—83—0212

Opinion filed December 30, 1983.—Rehearing denied January 27, 1984.

632

Fellheimer, Fellheimer, O'Dell & Travers, Ltd., of Pontiac (Robert M. Travers, of counsel), for appellants.

Dunn, Goebel, Ulbrich, Morel & Hundman, of Bloomington (John L. Morel, of counsel), for appellee Joey D. Rich.

Costigan & Wollrab, of Bloomington, for appellee Douglas R. Shoemaker.

JUSTICE GREEN delivered the opinion of the court:

Plaintiffs, Billie R. and Betty J. Runyon, co-administrators of the estate of their son, Philip David Runyon, deceased, appeal a judgment on a jury verdict in favor of defendants, Joey D. Rich and Douglas R. Shoemaker, entered May 24, 1983, in the circuit court of Livingston County. The action was brought to recover for the death of their son which resulted from a collision between a motorcycle he was driving and a truck driven by defendant Rich. Defendant Shoemaker was the driver of a vehicle being passed by the truck at the time of the collision. The Shoemaker vehicle did not make contact with the truck or the motorcycle.

On appeal the plaintiffs maintain the verdict was contrary to the manifest weight of the evidence. They also contend that the trial court erred (1) in allowing testimony concerning decedent's failure to wear a motorcycle helmet and the probability of injury or death had he worn one, (2) in refusing to allow the coroner to describe possible causes of death other than those listed on the death certificate, (3) in allowing two copies of the death certificate to be sent to the jury room, (4) in refusing to (a) direct a verdict in favor of plaintiff on the question of liability, or (b) direct a judgment *n.o.v.*, after trial, (5) in failing to properly instruct the jury, and (6) in failing to submit a proper verdict form to the jury. Plaintiffs also assert that they were unduly prejudiced by comments made by counsel for defendant Shoemaker.

Other than as to the question of when the decedent's motorcycle first became visible to defendants, the facts of the occurrence were not seriously disputed. Shoemaker and his female companion, Kelly Lucas, were driving in his car in a westerly direction on the 4-H blacktop near Pontiac, Illinois, when defendant Rich approached Shoemaker from behind and started to pass him on the left. The collision occurred before the truck had driven even with Shoemaker's vehicle. The damage to the truck was to the left front. Eighty-eight feet of skid marks in the westbound passing lane led to a gouge mark which was the apparent point of impact.

Robert Brace, a friend of the decedent, testified that decedent had been at Brace's trailer in Vermilion Estates shortly before the collision. Vermilion Estates was on the north of the blacktop a short distance west of the collision. Brace testified that he noticed nothing unusual about the motorcycle except that its headlight was on low beam. Brace stated he thought the light was dim because the motorcycle was idling. Shoemaker testified he was returning Kelly Lucas to her home in that trailer park.

Shoemaker testified that (1) he was driving 55 miler per hour, and (2) Rich had not completely passed his vehicle when Shoemaker first saw the motorcycle which was then between 40 and 45 feet in front of Rich's truck. Shoemaker said that the only thing he saw on the motorcycle was its light, which was "dimmer" than a regular motorcycle light, and that it appeared "all of a sudden." Shoemaker also testified that he would have been able to see a vehicle at the stop sign of the road to Vermilion Estates if the lights of the vehicle had been on. Shoemaker's passenger stated she did not see the motorcycle until it was within a couple of car lengths, and although she stated she observed nothing unusual about the motorcycle light, she testified that the collision occurred from one to three seconds after she first saw it.

Defendant Rich testified that when he started to pass Shoemaker's vehicle, he looked down the road and saw nothing coming. He stated that he was within two or three feet of the front bumper of Shoemaker's car when he first saw decedent's motorcycle 20 to 25 feet away, and he did not see the light on the motorcycle prior to that moment. He stated it was approximately one to three seconds from the time he first saw the decedent until the collision.

Plaintiffs maintain that the verdict for the defendant Rich cannot stand, because when the driver of a vehicle travels into the lane of traffic driving in the other direction and collides with a vehicle traveling in that other direction, as occurred here, the driver has the burden of proving he was not at fault. Plaintiffs maintain Rich did not do that here.

Plaintiffs rely on *Calvetti v. Seipp* (1966), 70 Ill. App. 2d 58, 216 N.E.2d 497, *aff'd* (1967), 37 Ill. 2d 596, 227 N.E.2d 758. There, the highway was covered with ice and snow, and defendant's vehicle skidded into the opposite lane of traffic and into plaintiff's vehicle. The court found that there was no evidence concerning the cause of the accident except that the highway was icy and slick and reversed a verdict in favor of defendant as against the manifest weight of the evidence. The court found the defendant to be negligent as a matter of law. The supreme court found that although it was snowing heavily,

visibility was poor, the dividing line was not clear, the road surface was slick, and her speed was between 25 and 30 miles per hour on a slight downgrade, the defendant made no showing that the skid into the opposite lane happened without negligence on her part. Defendant made no effort to show that she was not driving too fast for road and weather conditions, or that some unavoidable event caused her to lose control. The court found that the fact that her car skidded in front of the one in which plaintiff was riding must be deemed to have arisen from some negligent act or omission, in the absence of explanation to the contrary.

Similarly, in *Murphy v. Kumler* (1951), 344 Ill. App. 287, 100 N.E.2d 660, the appellate court reversed a verdict for defendant, the driver of a car that swerved into the opposite lane of traffic. The court found that it was the defendant's rather than the plaintiff's duty to show why defendant's automobile skidded on a wet or icy pavement. The court stated it was not incumbent upon the plaintiff to show conclusively why the defendant was on the wrong side of the road or the exact cause of the skid. The court stated in a collision such as this one, where one of the cars is on the wrong side of the highway and out of control, it is the duty of the defendant to show that he was in that situation because of some particular reason other than his own negligence.

■ Here, both defendants and Ms. Lucas, the only surviving eye-witnesses, all testified to the lights on the motorcycle becoming visible suddenly. The jury could have concluded that this actually happened. The decedent might have been riding with the lights off and suddenly turned them on. It was possible that the beam was very light until the decedent suddenly accelerated the motorcycle. Unlike in *Murphy*, Rich's vehicle was not out of control and unlike in either *Murphy* or *Clavetti*, Rich had the reasonable explanation that he turned into the eastbound lane to pass and continued to do so at a time when no visible light indicated that to do so was unsafe. The verdict for defendant Rich was not contrary to the manifest weight of the evidence. Most of plaintiffs' other claims of error are rendered moot by the verdict finding no liability.

Prior to trial, the court ordered that defendants be precluded from commenting upon or introducing evidence of the decedent's failure to wear a safety helmet "until there is a preliminary showing that failure to wear a safety helmet resulted in more severe injuries." The court later allowed testimony as to the wearing of the helmet as it relates to mitigation of damages. Plaintiffs maintain that any use of the evidence was reversible error. They cite *Rogers v. Frush* (1970), 257

Md. 233, 262 A.2d 549, where the court concluded that in the absence of statutory requirement, a motorcycle driver was under no duty to wear a helmet and held that no use could be made of such evidence.

■ Defendants' presentation of the testimony was merely for the purpose of mitigating damages. They contend that the use of this evidence is analogous to the use of testimony of the failure of one riding in an automobile to wear a seat belt. When a proper showing is made, such evidence should be admissible in mitigation of damages (*Dudanas v. Plate* (1976), 44 Ill. App. 3d 901, 358 N.E.2d 1171; *Eichorn v. Olson* (1975), 32 Ill. App. 3d 587, 335 N.E.2d 774; *Hale v. Cravens* (1970), 129 Ill. App. 2d 466, 263 N.E.2d 593) but not as to liability (*Wagner v. Zboncak* (1982), 111 Ill. App. 3d 268, 443 N.E.2d 1085; *Old Second National Bank v. Baumann* (1980), 86 Ill. App. 3d 547, 408 N.E.2d 224). We need not to determine whether the analogy can properly be drawn or whether the evidence in this case would permit use of the theory, because there were no damages to mitigate. The rulings of the trial court made clear that the evidence was limited to mitigation, and we do not deem the evidence to have prejudiced the plaintiffs on the question of liability.

■ Defendants introduced testimony of Dr. Gordon Schultz as to the reduced probability of injury if a motorcycle driver were wearing a helmet. This testimony was likewise limited to the question of damages and was not prejudicial to plaintiffs on the issue of liability. The question of the propriety of the evidence was also rendered moot by the verdict.

Prior to the testimony of the coroner, Keith Von Qualen, the court ruled that he could testify only to the issuance of the death certificate, his investigation of the case and his findings as to the cause of death as contained in the death certificate. He was also allowed to testify in other than laymen's terms as to what he saw. He testified the type of injury he observed was a "blunt trauma" or a "blunt injury." He observed a cut on the left forehead and abrasions or skinned areas on the right side of the head. The cut on the left side of the forehead was approximately five inches long and approximately two inches above the eye. He stated there were other abrasions on the chest and left knee, and the majority of the injuries were on the left side of the body. Finally, he observed an injury or unusual malformation of the left arm and wrist and abrasions to the left hand and fingers.

■ Mr. Von Qualen also testified that the decedent's chest was soft, indicating there might have been fractures. Upon motion of a defendant, this testimony was stricken as being a medical opinion re-

quiring the testimony of a physician. Other than the foregoing, we do not know what material testimony Mr. Von Qualen might have given had his testimony not been limited. No offer of proof was made. Mr. Von Qualen's special knowledge of anatomy was not limited to his experience as a coroner. He had a number of years of experience as a funeral director and embalmer, and he possessed a degree in mortuary science. He had also attended seminars on mortuary science. Although Mr. Von Qualen would have a knowledge of anatomy beyond that of most jurors, we find no abuse of discretion by the trial court in striking the foregoing testimony.

We note that although the testimony of the coroner bore, to some extent, upon the nature of the collision, its major thrust would have been to negate defendant's theory that death would have been prevented had decedent worn a helmet, an issue made moot by the verdict.

■ No error resulted from allowing two copies of the death certificate to be taken to the jury room. Both certificates were properly admitted into evidence, without objection, and, as such, were permitted to be carried from the bar by the jury (Ill. Rev. Stat. 1981, ch. 110, par. 2—1107(d)). The information on the documents had little bearing on the question of liability, and their cumulative nature was not prejudicial.

■ As we have determined that the verdict was not contrary to the manifest weight of the evidence, clearly no error occurred from the trial court's denial of plaintiffs' motions for a directed verdict on liability and a judgment n.o.v.

■ Plaintiffs assert that the trial court erred in giving court's instruction No. 2, an instruction somewhat in the form of Illinois Pattern Jury Instruction (IPI), Civil, No. A21.03 (2d ed. 1981 Supp.). However, the instruction listed as affirmative defenses the failure of the defendant to have a properly functioning headlight and his alleged failure to wear a helmet. The instruction then, rather than providing that the affirmative defense negates recovery, stated that any negligence of deceased in failing to have a proper headlight should be compared to defendants' negligence and any verdict for plaintiffs should be reduced by the amount that the deceased's injuries or loss would have been reduced had he been wearing a helmet. Again, we need not pass upon the propriety of the designation of affirmative defenses here, because both were explained in such terms that they did not bear on the question of liability but on damages. The jury had no reason to consider the question of damages.

■ Plaintiffs claim error in the giving of defendants' instruction

No. 4, but the only objection they made to the instruction as tendered was sustained and the instruction amended to correct the matter of which complaint was made. Plaintiffs' instruction No. 29 concerned section 11—702 of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—702) and had no bearing on the situation where one vehicle is passing another vehicle going in the same direction. Plaintiffs' instruction No. 11, which was refused by the court, concerned the use of evidence of the decedent's reputation for being a person of careful habits. Such evidence is not admissible to show due care on his part where, as here, there are eyewitnesses. (*Snedden v. Lavenka* (1981), 92 Ill. App. 3d 979, 416 N.E.2d 1097.) Under the doctrine of comparative negligence, the issue of care by the deceased does not bear upon liability, which was the issue upon which the case was decided.

■ Plaintiffs' claim that the trial court erred in failing to give a verdict form as required by section 2—1109 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1109) has not been preserved for review. The plaintiffs did not request a form when asked by the court, and in the absence of such a request, we cannot find the trial court erred. (87 Ill. 2d R. 366(b)(2)(i).) Moreover, as with plaintiffs' other contention, this one also concerned the issue of damages which was rendered moot by the verdict.

■ Plaintiffs' complaint as to argument of counsel for defendant Shoemaker is made for the first time on appeal. It is waived unless plain error resulted. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856, 858.) We find no such error in the arguments.

The judgment of the trial court is affirmed.

Affirmed.

MILLS, P.J., and TRAPP, J., concur.